Raymond C. PRICE and Control Sciences,
Inc., Plaintiffs-Appellees,

v.

LAKE SALES SUPPLY R. M., INC.,
Defendant-Appellant.

No. 74–1038.

United States Court of Appeals,
Tenth Circuit.

Argued Sept. 9, 1974.

Decided Oct. 16, 1974.

Rehearing Denied Dec. 5, 1974.

Richard D. Law, Denver, Colo. (James E. Pittenger, Denver, Colo., on the brief), for plaintiffs-appellees.

John M. Evans of Fuller & Evans, Denver, Colo. (Richard T. Laughlin, Kearny, N. J., and Clyde A. Faatz, Jr., Denver, Colo., on the brief), for defendant-appellant.

Before LEWIS, Chief Judge, and HOLLOWAY and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

This is a patent case which presents issues as to the validity of a patent (U. S. Patent No. 3,528,560) on a sample display rack. It was issued September 15, 1970 and is known as the Price Patent. Appellant Lake Sales Supply is shown to be a California corporation which had headquarters in Denver from January 1971 to March 1972, but subsequently ceased to do business in Colorado.

In addition to the validity issue it is contended by appellant that the Price Patent was not infringed: (a) that is, that the device did not infringe the patent, and (b) that there is a dearth of proof to establish an act of infringement.

Trial was to the court. The judge entered his memorandum opinion order and judgment on October 16, 1973. This contained the court's findings of fact and conclusions of law. The patent was held to be valid and infringed. The court enjoined appellant from making, using or selling the carpet display rack and granted appellees the right to a further hearing to determine damages from the infringement. This had been delayed pending the present disposition.

In 1968 the plaintiffs-appellees Raymond C. Price and Control Sciences, Inc. conceived the idea of a carpet display rack which would display carpet and at the same time would be hidden by the display and, in addition, would fold up for convenient storage and shipping. In his first attempt to obtain a patent Price described a device which had two elongated frame sections, similar in size, which rotated about the pivotal axes and which flattened out to permit easy storage and shipping and which could be moved into a transverse position in which the sections stand in an upright position to form a stable display position with fasteners along the upright portions of the frame capable of supporting samples.[1]

Price made a total of 13 claims originally, all of which were similar to the one which is noted in the footnote. All of these were rejected by the Examiner for obviousness defined in 35 U.S.C. § 103. Price proceeded to amend his claims by clarifying that the samples were to be hung on the outside of the elongated frame sections with supports for the samples intermediate to the sides of the U-shaped channel tubing which was used in the frame. Thereby, the samples would extend throughout substantially all the vertical extent of the structure concealing the frame itself.

The patent was issued on an invention consisting of two frames connected by a permanent pivot which allowed the two frames to close and to flatten out for storage and to readily open out into perpendicular intersecting planes for purposes of displaying sample binders of carpet on hangers or fasteners located on the sides of the frame so that the frame itself was substantially hidden.

The Examiner approved Claims 17, 18 and 19 which are set forth in an appendix to this opinion. Also in the appendix are pictorial reproductions which show the device in some detail. The infringing device also consisted of two intersecting. rectangle frames connected in their middles but which did not rotate in the same manner as the Price Patent described above. The two intersecting rectangles were connected by nuts and bolts together with a removable metal strip at the bottom of the frames secured in an open position perpendicular to one another. The infringing device also contained four removable headers, one located each at the top corners of the two rectangles. These were used for advertising purposes. The headers and the metal strip prevented the intersecting frames from being rotated into a closed position on a single plane. The display hangers were wrapped around the tubing, being secured by the nuts and bolts in the back of the tubing.

As noted, the trial court upheld the patent and ruled that it was infringed.

The contentions on appeal are, first, that the trial court erred in upholding the patent and, second, that the patentable aspects were first disclosed in the amended patent application and thus were made more than one year after the first sale of the invention to the public. Third, it is contended that the patent was not infringed.

■ In addition to the obviousness contention, the plaintiffs asserted at trial that the patent was lacking in invention. 35 U.S.C. § 102(a). This latter was a major issue at the trial, and the trial judge made a thorough analysis and upheld the patent. The thorough-

1. The original claim shows the general nature of the device:

A sample display fixture comprising two elongated frame sections of similar size and shape pivotally secured at their opposite ends permitting rotation about the pivotal axis to establish a first position in which the sections are in a substantially flat, superposed relation for storage and shipping and movable to a second substantially transverse position in which the sections are adapted to stand in an upright position, support members disposed in circumferentially spaced arrangement at the base of the respective upright frame sections for establishing a stable display position for the fixture on a supporting surface, and means at intervals along the upright portions of the frame sections for supporting sample binders of varying sizes and shapes.

ness may account for the abandonment of the contention on appeal. It was recognized by the trial court that a device may satisfy 35 U.S.C. § 102 with a novel combination of old elements and at the same time not fulfill the requirements of non-obviousness in 35 U.S.C. § 103. This invention admittedly consisted of a combination of old elements and hence the obviousness question pertained to the differences between the defendant's invention and the prior art, whereby the subject matter in its entirety would have been obvious to a person having ordinary skill in the art to which the subject matter pertains. The tests for determining obviousness are set forth in Graham v. John Deere Co. of Kansas City, 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). These tests are:

1. The scope and content of the prior art are to be determined.

2. Differences between the prior art and the claims of the patent in suit are to be ascertained.

3. The level of ordinary skill in the pertinent art needs to be resolved.

██ Having examined this background (pursuant to the *John Deere* decision), the obviousness or non-obviousness of the subject matter is to be determined. Ascertainment of the scope of the prior art and determination of the difference between the prior art and the claims in suit together with the level of skill in the art are all questions of fact. Whether in the light of these factual matters the patent is obvious then becomes a question of law.

██ Explicit findings in accordance with these criteria are to be made in every case according to dicta in opinions of the Supreme Court. Anderson's-Black Rock, Inc. v. Pavement Salvage Co., 396 U.S. 57, 62, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969). It is noteworthy that there is law to the effect that failure of the trial court to make explicit findings in the *John Deere* categories is fatal. Use of broad conclusionary terms is forbidden in these decisions. *See* Waldon,

Inc. v. Alexander Mfg. Co., 423 F.2d 91 (5th Cir. 1970). *See also* Van Gorp Mfg., Inc. v. Townley Industrial Plastics, Inc., 464 F.2d 16 (5th Cir. 1972). *Cf.* Antici v. KBH Corp., 324 F.Supp. 236 (N.D.Miss.1971). Other cases have not demanded this strict categorical approach. So long as it is clear that the court has grappled with the problems presented it is accepted. As far as we were able to ascertain, this circuit follows this latter approach. *See* Black, Sivalls & Bryson, Inc. v. National Tank Company, 445 F.2d 922 (10th Cir. 1971). The leading case for this proposition from our Circuit is Eimco Corporation v. Peterson Filters and Engineering Co., 406 F.2d 431 (10th Cir. 1969). Other circuits also follow this less stringent approach. *See* Trio Process Corp. v. L. Goldstein's Sons, Inc., 461 F.2d 66 (3d Cir. 1972), cert. denied 409 U.S. 997, 93 S.Ct. 319, 34 L.Ed.2d 262 (1972) and Frantz Mfg. Co. v. Phenix Mfg. Co., 457 F.2d 314, 322–323 (7th Cir. 1972). In *Frantz* the district court did not even discuss § 103 or *John Deere*. Nonetheless, the circuit court held that the district court had implicitly fulfilled the *John Deere* requirements. The trial court here did not use the "broad conclusionary terms" condemned in the *Waldon* case. In our view its findings were sufficient to provide the appellate court with a clear understanding of the trial court's reasons so as to present an adequate review. National Lead Co. v. Western Lead Products Co., 291 F.2d 447 (9th Cir. 1961).

We doubt that the Supreme Court intended that mere failure to use numbered paragraphs for the *John Deere* findings called for automatic reversal. The trial court in our case did indeed, however, consider carefully the scope and content of the prior art in relation to the patent in suit. While it noted that it was unnecessary to consider the numerous citations of prior art, it nevertheless considered all of the material presented.[2]

B. Obviousness

It is well established that a combination of old elements may be novel within the

2. The full text of the trial court's comments on the obviousness question is as follows:

■ In the case at bar the trial court did not limit the scope and content of the prior art. It broadly considered the prior art to include all of the citations brought to its attention by the parties.[3]

■ Appellant's further complaint is that the trial court failed to compel plaintiffs-appellees to produce the original of a document, a copy of which had been introduced as an exhibit. The problem stems from the trial court's reference to the copy which was somewhat illegible and its remark that it might have been the most cogent citation. Appellant says that the court should have compelled production of the original and its failure to do so violated its constitutional rights (due process). We see no error based on the Constitution or other law. The copy reveals sufficient information to allow a ruling as to pertinence of the depiction.

■ The trial court did not *cite* each and all items of prior art. It selected for citation the most relevant and it made the requisite comparisons with the claims in dispute. We find no error in this procedure. In holding as the trial court did that the display rack would not have been obvious to a person having ordinary skill in the art, the court was commenting on the basis of its analysis of the prior art. Taking into account the elements and common use and the kinds of things that persons have been creating and utilizing, we see no deficiency in not enunciating a measuring device for evaluation of the pertinent art.

meaning of 35 U.S.C. § 102 (1970) and yet fail to satisfy the requirement of non-obviousness established by 35 U.S.C. § 103 (1970). *See, e. g.,* Ohio Citizens Trust Company v. Lear Jet Corporation, 403 F.2d 956, 957 (10th Cir. 1968) cert. denied 394 U.S. 960, 89 S.Ct. 1308, 22 L. Ed.2d 561 (1968). The Supreme Court has spoken to the process by which the § 103 obviousness inquiry is to be resolved:

> While the ultimate question of patent validity is one of law, . . . the § 103 condition, which is but one of three conditions, each of which must be satisfied, lends itself to several basic factual inquiries. Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined.

Graham v. John Deere Co. of Kansas City, 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966) (citation omitted).

Defendant has failed to convince us that the Price patent is obvious in light of the prior art. The Kamenstein patent, No. 1,518,148, is a display rack designed to display merchandise on the inside of the rack, rather than on the outside, as is the case with the Price rack. The Miamo patent, No. 1,322,596, is a book-like display rack with numerous vertical pivotal axes, all of which are attached to stationary, wall-hung brackets. It has no supporting feet and does not teach exterior hangers even remotely similar to the Price hangers. The White patent, No. 410,226, is an easel showing two frame sections, pivotal connections, and supporting feet. The use to which these elements are put in White, however, has only the most remote resemblance to their use in the Price patent. The Whitman Candy Rack (Defendant's Exhibit T), while suitable, apparently, for display of boxed candy and ladies' purses, discloses nothing in the manner of hangers on the outside of the frame; indeed, decorative fringes on the exterior edges of the shelves would seem to preclude any such hanging of merchandise. While we could continue at great length to discuss the numerous citations of prior art brought to our attention by both parties, no useful end would be served by such a discussion. It will be sufficient simply to state that on the basis of a careful review of the prior art, the Price display rack does not appear to have been a development obvious to a person having ordinary skill in the art. We find that the Price Patent, No. 3,528,560, is not obvious within the meaning of 35 U.S.C. § 103 (1970).

3. Defendant complains in relationship to the consideration of the prior art of the court's refusal to allow its expert to testify as to the Sugden patent as an example of the prior art, because a copy had not been timely furnished to the plaintiffs. Defendant argues that this was error because such prior notice is not always required by the courts. But the trial court did consider this patent as part of the prior art, and we are unable, in view of the circumstances, to perceive error in the court's denial of the expert testimony.

Finally, the court's conclusion of non-obviousness, in the light of prior art, was rationally reached. The court's determination that the Price Patent "does not appear to have been a development obvious to a person having ordinary skill in the art" is indeed a conclusory holding, but as we have observed, this issue is more in the nature of a conclusion of law than a finding of fact. We are not then disposed to rule that it is thereby deficient.

The simplicity of this device does suggest to the uninitiated that it is obvious. This is not, however, a reliable test of obviousness. The inquiry tends instead to be whether the new combination of elements reflects something more than mechanical skill. *See* Oliver United Filters v. Silver, 206 F.2d 658, 663 (10th Cir. 1953) cert. denied 346 U.S. 923, 74 S.Ct. 308, 98 L.Ed. 416 (1953). Perhaps everything seems obvious with the advantage of hindsight. *See* Erie Technological Products, Inc. v. Diecraft Metal Products, Inc., 461 F.2d 5 (7th Cir. 1972).

Plaintiffs' invention consists of five essential elements.[4] All but one of these have some manifestation in the cited prior art and yet none of the cited prior art contains the combination of elements which is found in the Price Patent. We must conclude that this combination would not have been obvious to one of ordinary skill in the art so that he could have created from scratch a display rack having the five essential elements of this patent and could have done so in the manner in which it was accomplished by the plaintiffs. While it is possibly obvious to add each of the five elements to a composite of the other four, this would not be obvious to a person of ordinary skill in the art to allow him to successfully put all of the five elements together at one time. It is this synthesis in the Price invention which justifies the conclusion that it is not obvious and that it is thus entitled to be protected.

## II.

Was the appellee disqualified for a patent on the basis that his invention was offered, was sold, was on sale or in use in excess of one year prior to the date of the patent application? 35 U.S.C. § 102(b) provides that a person is not entitled to a patent if the invention was on sale or in use for more than a year prior to the date of application in the United States. The time of tender of the amendment creates this problem. Appellee here did not obtain a patent until he offered the amendment to the Patent Office. Because of this he is confronted with the possibility of being barred if the patentability aspect of the invention was first disclosed by an amendment. Such was the holding of the Supreme Court in Muncie Gear Works, Inc. v. Outboard Marine & Mfg. Corp., 315 U.S. 759, 62 S.Ct. 865, 86 L.Ed. 1171 (1942). Appellee Price made the initial application less than a year after the invention went on sale. But the time of the amendment was more than one year after the invention went on sale. Appellant contends that the *Muncie Gear* ruling is fatal to the plaintiffs' patent. The *Muncie Gear* rule recognizes, however, that where the amendment "only makes express what would have been regarded as the equivalent of earlier claims or where it merely incorporates into one claim [that which could] be gathered from the perusal of all, if read together, it [must] be allowed." Autogiro Company of America v. United States, 384 F.2d 391, 410 (Ct.Cl.1967). If, on the other hand, the amendment is something more than a clarification, *Muncie Gear* applies. *See* Monroe Auto Equip. Co. v. Heckethorn Mfg. & Supply Co., 332 F.2d 406 (6th Cir. 1964), which says "the question is whether there is anything in the prior disclosures which will support the subsequent claim, or

---

4. The five essential elements referred to are: (1) intersecting rectangular frames; (2) permanent pivots; (3) samples located on the *outside* faces of the frames; (4) sample holders *intermediate* the sides of the U-shaped tubing; and (5) overlapping samples that substantially hide the supporting frames.

**394**

does the claim broaden or change the original invention." *Id.* 332 F.2d at 417.

The trial court considered the amendment not to be in conflict with the rule of *Muncie Gear*. The Examiner reached the same conclusion. The opinion of the Examiner (and that of the court too) is to be given great weight in determining what is "new matter." *See* Technicon Instruments Corp. v. Coleman Instruments Corp., 385 F.2d 391 (7th Cir. 1967). The question is, of course, a factual evaluation. To us also the amendment is clarifying in its form and effect rather than new matter.

### III.

Does the evidence show that the appellant infringed the patent within the meaning of 35 U.S.C. § 271 which defines infringement as follows: "whoever without authority makes, uses or sells any patented invention, within the United States during the term of the patent therefor, infringes the patent."

Appellant argues, first, that the device is not infringed, but even if it is the evidence fails to show that appellant committed an act constituting an infringement. The question we consider first is whether the accused device falls within the patent. *See* Graver Tank and Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 607, 70 S.Ct. 854, 94 L.Ed. 1097 (1950).

As is ordinarily true, the accused device is not exactly like the patented one. One marked difference is that the patented device is pivotally secured in the middle of the two rectangles to allow them to be folded into an open position for display or into a closed position for other purposes. The two rectangular frames in the accused device are secured with nuts and bolts together with the removable strap and removable headers to maintain the open position at all times. And a second difference is that the patent has channels to hold sample binders

that are intermediate to the sides of the U-shaped tubing of which the frames are composed, whereas the accused device provides for sample binders with channels which wrap around the tubing of which the frames are composed.

The trial court held that although the accused device was not precisely identical, nevertheless the two devices do the same work in substantially the same way, accomplishing substantially the same result. [5]

In *McCullough* this court recognized that a patent which constitutes a marked improvement in the art is entitled to a substantial range of equivalents, and every element or its functional equivalent must be found in the accused device in order to have an infringement.

Consistent with *McCullough* and the other decisions, we agree with the trial court that the presence of the nuts and bolts rather than the pivot does not result in the accused device being outside the range of equivalents. It would seem that since the loosening of the nuts and bolts and the removal of the strap and headers accomplishes the same result as the pivot, the obviousness of this change brings the accused device within the scope of the equivalence doctrine.

The same is true of the method for holding the sample binders. These are also similar and thus within the scope of the equivalence doctrine. The wrap-around channels are functionally equivalent to the channels on the patent in suit located intermediate to the sides of the U-shaped tubing.

Whether there is infringement and applicability of equivalents are both factual questions. *See* Graver Tank and Mfg. Co. v. Linde Air Products Co., *supra*. The ruling is therefore not to be disturbed unless clearly erroneous. It is not.

Were acts of infringement established? Evidence of appellee to estab-

5. Union Paper-Bag Machine Co. v. Murphy, 97 U.S. 120, 125, 27 L.Ed. 935 (1878). *See* McCullough Tool Co. v. Well Surveys, Inc., 343 F.2d 381 (10th Cir. 1965) cert. denied, 383 U.S. 933, 86 S.Ct. 1061, 15 L.Ed.2d 851 (1965); Bewal, Inc. v. Minnesota Mining and Mfg. Co., 292 F.2d 159 (10th Cir. 1961); King-Seeley Thermos Co. v. Refrigerated Dispensers, Inc., 354 F.2d 533 (10th Cir. 1965).

lish *acts* of infringement was meager. There was evidence that the defendant used the infringing device on its own premises to display carpet. This, however, was stricken. The fact that the trial court nevertheless referred to it is harmless error in view of proof of another act of infringement. The other was sale of an infringing display rack to Montview Interiors, a carpet retailer. Appellant would have us disregard this evidence because it was not brought to his attention by supplementing the appellant's interrogatory as is required by Rule 26(e). The court received it to prevent manifest injustice.

It is quite true that parties are under a continuing duty to supplement their responses. *See* 4 J. Moore, Moore's Federal Practice § 26.81 (1970). Rule 26 clearly requires this. There is no indication, however, that the trial court believed that this failure to amend was a knowing concealment. In any event, it is questionable whether exclusion is the only proper penalty for failing to comply with the requirement. Surely the trial judge has some discretion in selecting the sanctions and it does not appear that the court abused its discretion in this instance.

\* \* \*

In sum, then, it is concluded that the plaintiff had a valid patent; that the defendant infringed that patent; and that the record is free from serious error.

The judgment of the district court is affirmed.

### APPENDIX A

The three claims that the Patent Examiner finally approved are as follows:

17. A sample display fixture comprising two elongated frame sections of similar size and shape pivotally secured at their opposite ends permitting rotation about the pivotal axis to establish a first position in which the sections are in a substantially flat superposed relation for storage and shipping and rotatable to a second substantially transverse position in which the sections are adapted to stand in an upright crossing position, support members disposed in circumferentially spaced arrangement at the base of the crossed upright frame sections for establishing a stable display position for the fixture on a supporting surface, and lengthwise adjustable means at intervals along the upright portions of the frame sections intermediate their sides for supporting sample binders of varying sizes and shapes in a hanging rectangular display at selective elevations with an upper binder covering a portion of the binder next below whereby said rectangular display conceals most of the frame sections.

18. A fixture as defined in Claim 17, in which the binder supporting means are arranged to dispose the hanging binders in substantially rectangular arrangement and in a position substantially perpendicular to the frame section in which they are supported.

19. A sample display fixture comprising two elongated frame sections of similar size and shape pivotally secured at their opposite ends permitting rotation about the pivotal axis to establish a first position in which the sections are in a substantially flat superposed relation for storage and shipping and rotatable to a second substantially transverse position in which the sections are adapted to stand in an upright crossing position, support members disposed in circumferentially spaced arrangement at the base of the crossed upright frame sections for establishing a stable display position for the fixture on a supporting surface, and horizontally disposed channels at intervals along the outer faces of the upright portions of the frame sections for supporting sample binders of varying sizes and shapes in a hanging rectangular display extending throughout substantially the vertical extent of the fixture and concealing most of the frame sections.

396

APPENDIX B

PLAINTIFF'S EXHIBIT

C-3789

Sept. 15, 1970       R. C. PRICE       3,528,560

SAMPLE DISPLAY FIXTURE

Filed Sept. 5, 1968

FIG. 1

FIG. 2

FIG. 3

FIG. 4

FIG. 6

FIG. 5

INVENTOR.
Raymond C. Price

BY

ATTORNEYS