**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**March 28, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

HENRY ISKAK PANJAITAN,

Petitioner,

v.

ALBERTO GONZALES, Attorney
General of the United States,

Respondent.

No. 05-9565

(No. A96-275-329)

(Petition for Review)

**ORDER AND JUDGMENT**[*]

Before **MURPHY**, **SEYMOUR**, and **McCONNELL**, Circuit Judges.

Petitioner Henry Iskak Panjaitan challenges a June 30, 2005, decision of the

Board of Immigration Appeals (BIA). Our jurisdiction arises under section

242(a)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1252(a)(1), and we

affirm.

Mr. Panjaitan is a native of Indonesia who entered the United States with a

nonimmigrant visa and applied for asylum, withholding of removal, and relief

under the United Nations Convention Against Torture (CAT). Following a

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

hearing, the immigration judge (IJ) found that Mr. Panjaitan had failed to file his application for asylum within the required one-year period and that he had failed to demonstrate either extraordinary circumstances or changed circumstances justifying his failure to do so. Additionally, the IJ found that Mr. Panjaitan was not entitled to relief under the CAT or withholding of removal. Mr. Panjaitan then filed an appeal of the IJ's determination with the BIA. Mr. Panjaitan did not argue on appeal that he was denied relief under the CAT or that he had been wrongfully denied withholding of removal, but instead raised a single issue: whether the transcript of the immigration hearing was so deficient that his due process rights were violated. The BIA affirmed the IJ's decision and found that Mr. Panjaitan failed to demonstrate that a more complete transcript would have changed the IJ's decision. Mr. Panjaitan now argues that this Court should reverse (1) the denial of his asylum application, (2) the denial of the protection of CAT and denial of withholding of removal, and (3) the BIA's holding that the transcript of the immigration hearing was not so deficient that Mr. Panjaitan's due process rights were violated. We consider each issue in turn.

*1. Mr. Panjaitan's Asylum Application*

The Immigration and Nationality Act (INA) provides that "[n]o court shall have jurisdiction to review any determination of the Attorney General" regarding the timeliness of any asylum application. INA § 208(a)(3), 8 U.S.C. § 1158(a)(3). As a result, this Court does not have jurisdiction to review an IJ's rulings

regarding failure to file an asylum application within the one-year time limit or whether an applicant demonstrated extraordinary circumstances excusing that failure. *Tsevegmid v. Ashcroft*, 336 F.3d 1231, 1235 (10th Cir. 2003). Consequently, we do not have jurisdiction as to the denial of Mr. Panjaitan's untimely asylum application.

*2. Denial of Withholding of Removal and Protection of CAT*

Mr. Panjaitan mentioned the issues regarding withholding of removal and relief under the CAT in the Notice of Appeal to the BIA, but did not actually brief those issues before the BIA. Issues not raised before the BIA on appeal are considered waived. *Tulengkey v. Gonzalez*, 425 F.3d 1277, 1279 n. 1 (10th Cir. 2005). This Court's review does not extend to potential arguments not made before the BIA. *Id.* Accordingly, Mr. Panjaitan's failure to raise these claims before the BIA precludes our review of them now.

*3. The Sufficiency of the Immigration Hearing Transcript*

The sole claim properly brought before this Court for review is whether the BIA correctly determined that no due process violation occurred regarding the transcript or translation of the immigration hearing.

Due process requires that the respondent at a deportation hearing have "an opportunity to be heard, to cross-examine witnesses against him, and to produce evidence . . . and that the decision be supported by substantial evidence." *Hadjimehdigholi v. INS*, 49 F.3d 642, 649 (10th Cir. 1995) (internal quotation

marks omitted).  Implicit in this requirement is the expectation that proceedings be accurately translated and transcribed, consistent with federal regulations governing immigration proceedings.  *See* 8 C.F.R. §§ 103.2(b)(3), 1240.5. However, in order to a establish a violation of his due process rights based on a mistranscription, a litigant must demonstrate "specific prejudice to his ability to perfect an appeal." *Kheireddine v. Gonzales*, 427 F.3d 80, 85 (1st Cir. 2005) (internal quotation marks omitted); *see also Price v. Lake Sales Supply R.M., Inc.*, 510 F.2d 388, 392 (10th Cir. 1974) (affirming the trial court's reliance on a challenged duplicate of a document where "[t]he copy reveals sufficient information to allow a ruling").  In other words, the transcription failure must have materially affected the outcome. *Kheireddine*, 427 F.3d at 86.  Remand is appropriate when translation is "less than perfect" only if the applicant can also demonstrate that he was unfairly prejudiced or prevented from presenting his case due to that error. *Hadjimehdigholi*, 49 F.3d at 650.

Mr. Panjaitan argues that a "more complete transcript would have changed the outcome of the Immigration decision."  Appellant's Br. 11.  He bases this argument on the IJ's finding that he and his wife's answers relating to their experiences in Indonesia were "vague" and "difficult to understand." AR 60.  Mr. Panjaitan argues that with superior interpretation, their answers "could have been understood by the Judge and not be [sic] regarded as 'unresponsive.'"

Appellant's Br. 12. As to each of Mr. Panjaitan's claims, however, the alleged deficiencies in the transcript could not have materially affected the outcome.

First, the transcript could not have affected the denial of the asylum application because Mr. Panjaitan's failure to file the application in a timely manner is undisputed. He makes no claim before this Court, and made no claim before the BIA, that errors of transcription or translation prevented the district court from considering some extraordinary or changed circumstances that excuse his failure to file within the one-year time limit.

Second, the transcript could not have affected the denial of withholding of removal and denial of relief under the CAT because the IJ based those decisions on his finding that Mr. Panjaitan was not credible. This Court treats the IJ's findings of fact as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Here, the IJ based his credibility determination on a significant discrepancy between Mr. Panjaitan's initial written application for asylum and his testimony before the immigration court. Both Mr. Panjaitan and his wife testified about three prior acts of violence perpetrated against their property by local Muslims: the burning of their plantation, the ransacking of their home, and their narrow escape from an angry mob on the highway. Yet on the written application form, when asked to "explain in detail" any "harm or mistreatment or threats in the past by anyone," Mr. Panjaitan discussed only verbal harassment:

Every[ ]time we go [to] work, church and anywhere, local people always put me down like "you are Christian people and go out of[] this country, this is nation of Muslim[s]." And my wife. [She is part] Chinese and she got r[idiculed] and put down by local people (Muslim). . . . [T]hey did it to me and my family many time[s], every[ ]time we walk [ar]ound.

AR 476. Because of this apparent change of story, along with a general lack of specificity and evasiveness, the IJ found Mr. Panjaitan's testimony not credible. These "specific, cogent reasons" justify the IJ's adverse credibility determination. *See Wiransane v. Ashcroft*, 366 F.3d 889, 897 (10th Cir. 2004) (internal quotation marks omitted).

Before the BIA, Mr. Panjaitan pointed out that the transcript of the hearing, which runs to 168 pages, contains some 75 indications that a portion of the testimony by Mr. Panjaitan or his wife was "indiscernible." AR 21. A close review of the transcript, however, reveals no serious deficiency. Although it appears that the transcriber had occasional difficulty understanding words or phrases spoken by the translator, the substance of each answer given by Mr. Panjaitan and his wife is perfectly clear. Moreover, to the extent Mr. Panjaitan simply alleges that the *transcript* of his testimony was insufficient, he has failed to show any prejudice. The IJ heard all of the testimony in person, and did not need to rely on the subsequently prepared written record when assessing Mr. Panjaitan's credibility. Accordingly, there was no defect in the transcript or translation that affected the outcome of the proceedings before the IJ.

-6-

The petition for review is **DISMISSED**.

Entered for the Court,

Michael W. McConnell
Circuit Judge