**CENTRAL SOYA COMPANY, INC.,**
**Plaintiff-Appellee,**

v.

**GEO. A. HORMEL & COMPANY,**
**Defendant-Appellant.**

**No. 79–1959.**

United States Court of Appeals,
Tenth Circuit.

Argued Nov. 20, 1980.

Decided March 30, 1981.

Rehearing Denied May 19, 1981.

Jerome F. Fallon, Chicago, Ill. (Harry A. Woods, Jr., Oklahoma City, Okl., and Edward P. Armstrong, Fort Wayne, Ind., with him on brief), for plaintiff-appellee.

Herman H. Bains of Williamson, Bains, Moore & Hansen, Minneapolis, Minn., for defendant-appellant.

Before McWILLIAMS and LOGAN, Circuit Judges, and PALMIERI, District Judge.*

McWILLIAMS, Circuit Judge.

This is a patent infringement case involving pork fritters.[1] United States Letters Patent No. 3,208,856, entitled "Meat Product and Method and Apparatus for Making Same," was issued on September 28, 1965, pursuant to an application filed by Fred W. Luker, the inventor, on January 9, 1962. The claim of what we shall hereinafter refer to as the Luker patent is as follows:

---

* Hon. Edmund L. Palmieri, U. S. District Judge for the Southern District of New York, sitting by designation.

1. *Webster's Third New International Dictionary* (1966) defines the word "fritter" as follows: "a small quantity of batter often containing fruit or meat and fried in deep fat or sauteed."

A method of making a food product in the form of a patty comprising applying a coating of crumbs of breading material to a slice of raw meat and subsequently compressing said slice under pressure great enough to force the crumbs deeply into the meat, to substantially reduce the thickness of the slice, to expand the area of the slice approximately 100 to 150 percent, and to cause the slice to be impregnated with the crumbs substantially throughout its thickness.

Fred Luker, the inventor, operated Fred's Frozen Foods, a food processing plant in Noblesville, Indiana. Luker sold the business to John S. Marten,[2] who expanded the operation by opening a second food processing plant in Carthage, Missouri. Subsequently, Fred's Frozen Foods was acquired by Central Soya Company, Inc., an Indiana corporation. The Luker patent was first assigned to Marten, who, in turn, assigned it to Central Soya.

Operating under the Luker Patent, Central Soya made and merchandised a breaded pork loin patty. Thomas Gibbons was a long-time employee of Fred's Frozen Foods, and at one time served as the production supervisor of the Noblesville plant. Gibbons was later transferred to the Carthage plant, which he put into operation, and, among other things, set up the machinery to produce pork loin fritters, using the same methods as were used in the Noblesville plant.

In 1970, Gibbons terminated his employment with Central Soya, doing business as Fred's Frozen Foods, and accepted employment with Geo. A. Hormel & Company, a Delaware corporation. Hormel operates a processing plant in Oklahoma City, Oklahoma, under the trade name "Hormel's Fine Frozen Foods." Some time after Gibbons began working for Hormel, the company decided to enter the pork fritter business. Gibbons, the erstwhile Central Soya employee, set up Hormel's pork loin fritter production line. Hormel's pork loin fritters were suspiciously similar to those of Central

Soya's, or so Central Soya thought. Therein lies the genesis of the present litigation.

Central Soya brought suit against Hormel in the United States District Court for the District of Western Oklahoma, claiming that Hormel was infringing the Luker patent, now owned by Central Soya. Hormel, by answer, challenged the validity of the Luker patent, and, alternatively, denied infringement. Trial was to the court, which found for Central Soya and granted injunctive relief. The trial court reserved jurisdiction on the question of money damages. In thus holding, the trial court found that the Luker patent was valid, and that Hormel had infringed thereon. Judgment was entered in conformity with Fed.R.Civ.P. 54(b). The trial court's Memorandum Opinion appears as *Central Soya Company, Inc. v. Geo. A. Hormel & Company*, 205 U.S. Pat.Q. 421 (1979). Hormel appeals.

Hormel's position in this Court may be summarized as follows: (1) the trial court erred as a matter of law in concluding that the Luker patent is not invalid under 35 U.S.C. § 103 (1976); (2) the trial court's finding that Hormel infringed the Luker patent under the doctrine of equivalents is clearly erroneous; and (3) in applying the doctrine of equivalents, the trial court failed to consider the doctrine of file wrapper estoppel. Each of these matters will be considered.

## I. *Validity*

■ As indicated, the Luker patent was applied for in 1962 and was granted by the Patent Office in 1965. Under 35 U.S.C. § 282 (1976), a patent is presumed valid and the burden of establishing invalidity rests on the party asserting it. In *Sidewinder Marine, Inc. v. Starbuck Kustom Boats and Products, Inc.*, 597 F.2d 201, 205–06 (10th Cir. 1979), we stated that, although the statutory presumption of validity is rebuttable, the burden on an alleged infringer to rebut the presumption of validity is a heavy one which can be overcome only by clear

---

**2.** Between the time that Luker applied for the patent and the time it was issued, Luker had assigned his rights to Marten. So the patent actually was issued in Marten's name.

and convincing evidence.[3] The basis for the very strong presumption of validity is the expertise of the Patent Office in determining whether the conditions for patentability have been met.

In this Court, the only ground urged by Hormel for holding the Luker patent invalid is based on 35 U.S.C. § 103, which provides as follows:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

The statute provides, in essence, that a patent shall not be granted if the differences between the method sought to be patented and the prior art in the field are such that the subject matter would have been obvious to a person having ordinary skill in the art to which the subject matter pertains. In this regard, Hormel asserts that the differences between certain prior patents, particularly the so-called Ray patent,[4] and Luker's own prior use of a manual method and, later, a semi-automatic process, in breading pork patties, and the subject matter which Luker sought to patent are such that the subject matter as a whole would have been obvious to a person having ordinary skill in the art. It is Hormel's position that the trial court should have held, as a matter of law, that the Luker patent was invalid under 35 U.S.C. § 103. We are not in accord with this argument.

■ In applying 35 U.S.C. § 103, the trial court first had to ascertain the nature and scope of the prior art. Then the differences between the prior art and the claims sought to be patented had to be identified. Finally, keeping in mind the prior art, the trial court had to decide whether, notwithstanding the differences between the prior art and the claims sought to be patented, the claims sought to be patented would still be obvious to a person having ordinary skill in the art to which the claims sought to be patented pertain. Although the ultimate issue of patent validity is a question of law, such terms as "nature and scope," "differences," "obviousness," and "ordinary skill" pose questions of fact, not law. *Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545 (1966); *CMI Corp. v. Metropolitan Enterprises, Inc.*, 534 F.2d 874, 880 (10th Cir. 1976). In this regard, the critical findings of the trial court are supported by the record and warrant the conclusion that the subject matter sought to be patented is non-obvious. *Price v. Lake Sales Supply R. M., Inc.*, 510 F.2d 388 (10th Cir. 1974).

## II. *Infringement*

Hormel's method of making pork fritters was quite similar to that of Central Soya, which is not surprising in view of the fact that Hormel's method was installed and supervised by a former employee of Central Soya. Each method involved: (1) the molding of raw, unshaped pieces of pork loins to produce uniform blocks of meat; (2) slicing

---

3. As to the presumption of validity, *see also Mumm v. Jacob E. Decker & Sons*, 301 U.S. 168, 171, 57 S.Ct. 675, 676, 81 L.Ed. 983 (1937) and *Radio Corp. of America v. Radio Engineering Laboratories, Inc.*, 293 U.S. 1, 7–8, 55 S.Ct. 928, 930–931, 79 L.Ed. 163 (1934).

4. The record indicates that there were significant differences between the Luker patent and the Ray patent. Most notably, the Ray method involved the application of considerably less pressure on the meat than did the Luker method. Under the Ray method, the breaded meat went through a flanged compression roller, the flanges preventing the degree of compression called for in the Luker method. In the Luker method, the pressure applied to the meat patty was considerable, and resulted in the impregnation of bread crumbs throughout the meat patty, as well as a marked expansion of the surface area of the meat. In comparison, the Ray method involved only a slight amount of pressure, which basically resulted in coating the outside of the meat patty, with little or no impregnation.

the meat into pieces of the same size; (3) coating the slices with batter and bread crumbs; (4) compressing, and thereby expanding, the breaded slices by means of a roller unit, which, at the same time impregnated the slice of meat with bread crumbs, as opposed to simply coating the exterior of the slice of meat with bread crumbs; and (5) applying a second coat of batter and crumbs.

The principal difference between Hormel's method and Central Soya's was the amount of compression applied to the slices of pork that were coated with batter and bread crumbs. Compression, of course, reduced the thickness of the slice of meat and correspondingly expanded the surface area of the finished product, and at the same time *impregnating* the patty with bread crumbs. Hormel applied less compression than Central Soya, so that Hormel's fritters were thicker than Central Soya's, and the latter's fritters therefore had a greater surface area than did Hormel's.

■ Since Hormel used less compression than Central Soya, the trial court found that the Luker patent had not been "literally infringed" by Hormel. The trial court, however, observed that if patents were interpreted to extend only to the literal language of their claims, minor deviations could be devised which would elude the reach of most patents. In this regard, in *McCullough Tool Company v. Well Surveys, Inc.*, 343 F.2d 381, 401 (10th Cir. 1965), *cert. denied*, 383 U.S. 933, 86 S.Ct. 1061, 15 L.Ed.2d 851, *rehearing denied*, 385 U.S. 995, 87 S.Ct. 593, 17 L.Ed.2d 455 (1966), we stated that the true test of infringement is whether the accused device and the patented device do the same work in substantially

the same way to accomplish substantially the same result. Applying the "doctrine of equivalents," [5] designed to protect a patent holder from devices or methods that differ merely in "name, form or shape" from the patented invention, the trial court held that Hormel had, in fact, infringed on the Luker patent. 205 U.S.Pat.Q. at 426–28. Counsel concedes that this was a finding of fact, not a conclusion of law, but asserts that such finding is "clearly erroneous" under Fed.R. Civ.P. 52(a). We disagree. The finding of infringement based on the "doctrine of equivalents" finds support in the present record, and on review we may not disturb it.

### III. *File Wrapper Estoppel*

■ It is also argued that the trial court, in applying the doctrine of equivalents, failed to consider the doctrine of file wrapper estoppel. In this regard, the law is settled that the extent of an invention is to be determined by the patent claims, together with the file wrapper history in the Patent Office, and a claim which has been narrowed for the purpose of obtaining a patent cannot be later expanded to include that which was eliminated. *Graham v. John Deere Co.*, 383 U.S. 1, 33, 86 S.Ct. 684, 701, 15 L.Ed.2d 545 (1966).[6] The trial court made no reference to file wrapper estoppel, but we do not think that doctrine applies to the facts of the present case. The amendment made by Luker to his application, wherein he made more specific the percent of meat expansion caused by the compression, was for purposes of clarification, and was not a disclaimer made merely to overcome the objections of the Patent Office. *Eimco Corporation v. Peterson Filters and Engineering Company*, 406 F.2d 431, 438

5. *See, e. g., Price v. Lake Sales Supply R. M., Inc.*, 510 F.2d 388 (10th Cir. 1974), in which the court found "that a patent which constitutes a marked improvement in the art is entitled to a substantial range of equivalents." *Id.* at 394. See also the discussion of the doctrine of equivalents in *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 607–10, 70 S.Ct. 854, 855–57, 94 L.Ed. 1097 (1950). The Court found in *Graver* that the finding of equivalency is a question of fact, *id.* at 609, 70 S.Ct. at 856, and noted: "One who seeks to pirate an inven-

tion, like one who seeks to pirate a copyrighted book or play, may be expected to introduce minor variations to conceal and shelter the piracy. Outright and forthright duplication is a dull and very rare type of infringement." *Id.* at 607, 70 S.Ct. at 855.

6. Regarding the doctrine of file wrapper estoppel, *see also Doran Coffee Roasting Co. v. Wyott Mfg. Co.*, 267 F.2d 200, 203 (10th Cir. 1959).

(10th Cir. 1968), *cert. denied*, 395 U.S. 963, 89 S.Ct. 2105, 23 L.Ed.2d 749 (1969).

Judgment affirmed.