CENTRAL SOYA COMPANY, INC., Plaintiff,

v.

GEO. A. HORMEL & COMPANY, Defendant.

No. CIV–76–32–D.

United States District Court, W.D. Oklahoma.

March 29, 1983.

---

**56**

Harry A. Woods, Jr., Oklahoma City, Okl., Jerome F. Fallon, Chicago, Ill., Edward P. Armstrong, Fort Wayne, Ind., for plaintiff.

Jerry J. Dunlap, Oklahoma City, Okl., Herman H. Bains, Minneapolis, Minn., for defendant.

## OPINION

DAUGHERTY, District Judge.

Plaintiff Central Soya Company, Inc. (Central Soya) became the owner in 1970 of Patent No. 3,208,856 entitled "Method of Making a Meat Product." The patented method involved the procedure of coating a slice of meat with batter and bread crumbs and then compressing the same to force the crumbs deep into the meat and expand the area of the slice approximately 100 to 150 percent. Compression is accomplished through the use of an apparatus containing a pair of squeeze rolls spaced slightly apart to receive the breaded slice.

Plaintiff brought this action against the Defendant Geo. A. Hormel & Company (Hormel) claiming that Hormel infringed its patent in producing and marketing a breaded pork loin fritter. The matters of the validity of said patent and infringement thereof by Defendant were tried to this Court with judgment being rendered on said issues in favor of the Plaintiff. The Court reserved the damages, attorney fees and interest issues. The determination of this Court was affirmed by the Court of Appeals for the Tenth Circuit. See 645 F.2d 847 (Fe.1981). The case is now before the Court for consideration of the reserved issues under 35 U.S.C. § 284 and § 285.

In this accounting phase Plaintiff established that it used the patented process itself in making and marketing breaded pork loin fritters and requests damages for Defendant's infringement in the form of lost profits. Claiming that Defendant's infringement was willful and deliberate, Plaintiff requests that its lost profits be increased by trebling same and that it be allowed its attorney fees herein because of said willful and deliberate infringement. Plaintiff also requests prejudgment interest from the date of the last infringement.

Defendant resists Plaintiff's request for lost profits as not being applicable in this method patent case and urges that Plaintiff should recover only a reasonable royalty and this based on savings realized by Defendant by using Plaintiff's patented process; Defendant asserts that it did not willfully and deliberately infringe Plaintiff's patent and a reasonable royalty or any other damages awarded should not be increased nor should Plaintiff recover its attorney fees herein. Defendant also resists an award of prejudgment interest.

The Court has conducted a trial on this accounting phase of the case and has received arguments and proposed findings of fact and conclusions of law from the parties.

## LOST PROFITS

Damages for infringement may take the form of lost profits when a plaintiff itself uses the patented process, *Devex Corp. v. General Motors Corp.*, 667 F.2d 347 (3rd Cir.1981), *cert. denied*, 456 U.S. 990, 102 S.Ct. 2270, 73 L.Ed.2d 1285, provided, the plaintiff satisfies its burden to affirmatively prove the four essentials set out below. Also see *Western Elec. Co. v. Stewart-Warner Corp.*, 631 F.2d 333, (4th

Cir.1980).[1] It is not disputed in the evidentiary record that Plaintiff used its patent in making and marketing breaded pork loin fritters for the period of alleged infringement by Defendant, namely, 1972/3—1978/9.

For Plaintiff to recover lost profits it must demonstrate that "but for" the infringement it would have made the sales that the Defendant made and Plaintiff must present affirmative proof of (1) demand for the patented product in the marketplace, (2) Plaintiff's production and marketing capacity to meet the demand, (3) the absence of acceptable non-infringing substitutes and (4) detailed computations on the loss of profits. There is no presumption that Plaintiff would have made the sales in question. But the burden of proof on Plaintiff is not absolute but rather one of reasonable probabilities. In awarding lost profits, reasonable probability rather than precision is required. Calculation of lost profits is by its nature imprecise. They cannot be computed with certainty. Doubts concerning the calculation of lost profits must be resolved against the infringer. See *Milgo Electronic v. United Bus. Communications,* 623 F.2d 645 (10th Cir.1980), *cert. denied,* 449 U.S. 1066, 101 S.Ct. 794, 66 L.Ed.2d 611.

As to (1) demand and (2) capacity, *supra,* Defendant acknowledges Plaintiff has met its burden of proof. There is dispute between the parties, however, as to (3) the absence of acceptable non-infringing substitutes and (4) detailed computations, *supra.*

The Court finds that Plaintiff has met its burden to establish the absence of an acceptable non-infringing substitute. When Defendant stopped infringing Plaintiff's patent, it bought and marketed breaded pork loin fritters made by a company known as Ranch Hand Foods, Inc. (Ranch Hand). But the evidence shows that Ranch Hand in making its breaded pork loin fritters infringed Plaintiff's patent. Hence, this substitute was infringing and not non-infringing. Plaintiff produced evidence which the Court finds to be the fact that there was no acceptable non-infringing substitute for breaded pork loin fritters made by Plaintiff's patented method because no other breaded sliced pork product would have both the appearance and mouth feel developed by Plaintiff's method of embedding bread crumbs in a slice of meat. The demand for products made by Plaintiff's process to the exclusion of any other breaded pork loin fritter as a substitute is shown by evidence that 80% of Defendant's sales were to two former customers of Plaintiff obtained by Defendant as its customers for breaded pork loin fritters when Defendant started infringing Plaintiff's patent. The evidence indicates these customers urged Defendant to produce a breaded pork loin fritter like Plaintiff's. Defendant's evidence mentions a few other alleged makers of breaded pork loin fritters, but the Court finds no evidence that they were non-infringing makers of breaded pork loin fritters and at most the scale of their operations was insignificant in the market. There is credible testimony that there was no way to make a competitive breaded pork loin fritter without using squeeze rolls with a fair assumption to be made therefrom that there was no acceptable non-infringing substitute in the market area served by Plaintiff and Defendant. *Panduit Corp. v. Stahlin Bros. Fibre Works,* 575 F.2d 1152 (6th Cir.1978).

As to element (4), detailed computations on loss of profits, the evidence is persuasive that "but for" Defendant's infringing Plaintiff's patent in making and marketing breaded pork loin fritters, Defendant would not have sold 80% of its output of breaded pork loin fritters to two former customers of Plaintiff, namely, Mid-Central Fish Company of Kansas City and John

---

**1.** The Court believes that the sales price of the finished product is a proper base for the computation of damages herein. Defendant's line of breaded pork loin fritters derived substantially all of its value as marketable items from the use of Plaintiff's method patent. It is not believed that Defendant would have made and marketed its line of breaded pork loin fritters by using a meat cleaver, a procedure Defendant suggests affords an acceptable non-infringing substitute.

Graves Food Services, Inc., of Chillicothe, Missouri. There is a reasonable probability that but for Defendant's infringement, Plaintiff would also have sold at least half of the remaining 20% of Defendant's sales.

There was evidence produced that Plaintiff's breaded pork loin fritter was the real model or the standard of the industry, others produced were not as well processed in that they were not as flat, not tenderized by crushing and the adhesion of the breading during cooking did not compare.

Plaintiff's evidence satisfies the requirement of detailed computations on the loss of profits. Plaintiff had a system of high reliability by which it reported to management, in the ordinary course of business and not prepared for the purpose of this lawsuit, its profit or loss on various products including its breaded pork loin fritters. The system produced evidence for most of the period involved revealing Plaintiff's profit on its breaded pork loin fritter line per pound of the same. The system added back fixed costs in order to determine incremental income for breaded pork loin fritters because Plaintiff was already selling many other products to expected customers and the addition of the new breaded pork loin fritter line was achieved through increasing only variable expenses such as direct ingredient and production cost and packaging, storage, brokerage and promotion costs peculiar to the breaded pork loin fritter sales. The Court finds this to be standard cost accounting and a reliable system. *Milgo Electronic v. United Bus. Communications, supra,* at page 664; *General Electric Company v. Sciaky Bros., Inc.,* 415 F.2d 1068, at pages 1074–5 (6th Cir.1969); *Electric Pipe Line v. Fluid Systems,* 250 F.2d 697, at page 699 (2nd Cir.1957). Plaintiff did not keep records on which it based incremental income figures for breaded pork loin fritters for 1972/73 and 1973/74. In its calculations, Plaintiff used the incremental income figure for breaded pork loin fritters for the next available year, 1974/75, which was the lowest for the period involved. This is deemed to be a reliable, proper and fair approach under the circumstances.

■ By applying Plaintiff's profit per pound of breaded pork loin fritters sold for the period on a yearly basis to 90% of Defendant's poundage of breaded pork loin fritters it sold during the period on a yearly basis and deducting the amount of interest on additional working capital Plaintiff would have required for the additional line of breaded pork loin fritters at appropriate annual interest rates, the Court finds the total of Plaintiff's lost profits for the entire period amounts to $152,982.00. Plaintiff desires, but the Court declines, to add an interest factor to the above figure representing interest Plaintiff had to pay on monies it borrowed over the period involved, which would not have been necessary had Plaintiff made these additional sales of 90% of Plaintiff's sales of breaded pork loin fritters. This declination is based on such request and supporting data being deemed too speculative. Finally, the Court finds that the above total figure is not less than a reasonable royalty would have been. In fact, a 20% royalty on sales (not savings as Defendant urges) of Defendant, which percentage appears reasonable under the evidence,[2] would be only slightly less than Plaintiff's loss of profits.

### INCREASED DAMAGES

35 U.S.C. § 284 provides:

*§ 284. Damages*

Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court.

When the damages are not found by a jury, the court shall assess them. In either event the court may increase the rate.

---

**2.** As Plaintiff has not granted a license on its patent, there was no evidence of a going royalty rate.

damages up to three times the amount found or assessed.

The court may receive expert testimony as an aid to the determination of damages or of what royalty would be reasonable under the circumstances.

■■■■ By this statute compensatory damages may be increased up to three times the amount of compensatory damages found or assessed. An increase in damages is proper if Defendant's conduct is found to be intentional, deliberate, willful and made with reckless disregard of Plaintiff's patent rights. An award of increased damages is a matter committed to the discretion of the trial court under this statute. *Milgo Electronic v. United Bus. Communications, supra,* at 665. From the evidence before the Court, the Court finds such intentional, deliberate, willful and reckless conduct on the part of the Defendant in infringing Plaintiff's patent. This determination is based on the following:

(1) Thomas Gibbons, Plaintiff's highly experienced and knowledgeable employee in making breaded pork loin fritters and the system and equipment set up for doing so, left Plaintiff's employ in December of 1969 and was hired by Defendant in January, 1970,

(2) Shortly after being employed by Defendant, Gibbons started acquiring the necessary components to duplicate Plaintiff's system for making breaded pork loin fritters to include obtaining a squeeze roll unit from Plaintiff's supplier thereof,

(3) In May, 1970, Defendant's legal department became concerned about infringing Plaintiff's patent,

(4) In June, 1970, the opinion of an outside patent law firm was sought,

(5) In September, 1970, such firm furnished its opinion stating that infringement of Plaintiff's patent could be avoided if Defendant would squeeze the meat slices so that their expansion would be under 100 percent,

(6) Such firm also advised that Defendant's production of breaded pork loin fritters if possible be done within the jurisdiction of the United States Court of Appeals for the Eighth Circuit, as such Circuit has not held a patent either valid or infringed within recent history,

(7) The opinion of such firm relied on the Ray patent (Patent No. 2,845,040) which was a file wrapper reference previously considered by the Patent Office,

(8) Defendant's activities in obtaining the breaded pork loin fritter business from two large accounts of Plaintiff's,

(9) Defendant's written expression and belief that it could proceed with Plaintiff's former employee and Plaintiff's breaded pork loin fritter manufacturing method and process with some justification or safety as Defendant was "too good a customer" of Plaintiff for the latter to bring suit for patent infringement,

(10) The creation of a breaded pork loin fritter manufacturing line under Gibbons' direction which was a copy of all the elements and steps of Plaintiff's line on which the patent was based,

(11) Defendant's failure to measure the percentage expansion of its breaded pork loin fritters at and from the time of its first production in February, 1973 until June of 1975 notwithstanding the importance of this to the issue of infringement as related by its outside patent counsel,

(12) Gibbons' testimony that the spacing of the squeeze rolls in Plaintiff's and Defendant's operation were approximately the same,

(13) Defendant's failure to seek an updated legal opinion at the time of its first production in February, 1973, and,

(14) Defendant's turning to Ranch Hand for the same product when it saw fit to stop its own manufacturing line of breaded pork loin fritters.

Based on the above findings that the infringement by Defendant was intentional, willful, deliberate and in reckless disregard of Plaintiff's patent, the damages of $152,982.00 should be in the Court's judgment and discretion doubled to $305,964.00.

ATTORNEY FEES

35 U.S.C. § 285 provides as follows:

*§ 285. Attorney fees*

The court in exceptional cases may award reasonable attorney fees to the prevailing party.

 The trial court in patent infringement actions is authorized to award attorney fees to the party prevailing if the case qualifies as "exceptional". Like an award of increased damages, an award of attorney fees is committed to the discretion of the trial court. A finding that infringement was willful and deliberate may justify an award of attorney fees depending on the circumstances of a particular case. *Milgo Electronic v. United Bus. Communications, supra,* at page 667. Finding that Defendant's infringement of Plaintiff's patent was willful and deliberate as above set out, the Court finds this to be an exceptional case under said statute and reasonable attorney fees should be awarded to Plaintiff. Evidence was received with reference to what would be reasonable attorney fees for Plaintiff. The leading and early case in this regard is *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974). This case has been cited with approval in this Circuit, *Battle v. Anderson,* 614 F.2d 251 (10th Cir.1980). The factors set forth in these cases have been fully considered by the Court and the Court has used its own knowledge in the area. Plaintiff's evidence tends to support attorney fees and expenses of $162,713.00. In considering the time involved in this litigation, that it has been to our Circuit on the liability issue and back, the complexity of the litigation and other pertinent factors, it is the Court's determination that attorney fees in the amount of $100,000.00 and expenses in the amount of $29,000.00 for a total of $129,000.00 would be reasonable attorney fees and expenses for Plaintiff, and the same should be awarded herein.

---

3. The Court has elected to use the legal rate of interest in Oklahoma as a fair and appropriate

PREJUDGMENT INTEREST

 35 U.S.C. § 284, *supra,* affords the trial court discretion to award interest to Plaintiff in addition to other damages for Defendant's patent infringement involved herein. The basis for such an award is a finding of willful and deliberate infringement as hereinabove found by the Court. In a patent case such interest may run from the date of last infringement. *Milgo Electronic v. United Bus. Communications, supra,* at 667. In the discretion of the Court and under the circumstances of this case as recited herein, the Court awards Plaintiff prejudgment interest herein on compensatory damages awarded by the Court ($152,982.00) computed from the date of the last infringement at the rate of 6% interest [3] per annum.

Judgment on this accounting phase of the case should be entered herein in accordance with the foregoing. Counsel for Plaintiff will prepare an appropriate judgment and submit the same to the Court within ten (10) days from the date hereof.