**CENTRAL SOYA COMPANY, INC., Appellee,**

v.

**GEO. A. HORMEL & COMPANY, Appellant.**

**Appeal No. 83–978.**

United States Court of Appeals, Federal Circuit.

Dec. 27, 1983.

---

See also, 10 Cir., 645 F.2d 847.

John L. Alex, Chicago, Ill., argued for appellant. With him on brief were Fred S. Lockwood and David Lesht, Chicago, Ill., of counsel.

Jerome F. Fallon, Chicago, Ill., argued for appellee. With him on brief were Harry A. Woods, Jr., Oklahoma City, Okl., and Edward P. Armstrong, Fort Wayne, Ind.

Before RICH, Circuit Judge, NICHOLS, Senior Circuit Judge, and BALDWIN, Circuit Judge.

RICH, Circuit Judge.

This appeal is from the April 8, 1983, judgment of the United States District Court for the Western District of Oklahoma, 219 USPQ 878, sitting without a jury, holding appellee, Central Soya Company, Inc. (Central Soya) entitled to recover from appellant, Geo. A. Hormel & Company (Hormel) $100,000.00 in attorney fees, $29,000.00 in expenses, $152,980.00 in compensatory damages, which were doubled to $305,964.00, and 6% interest on the compensatory damages in the amount of $41,116.93.

This determination followed the May 19, 1981, decision of the Tenth Circuit Court of Appeals [1] affirming the district court's August 10, 1979, decision [2] that Central Soya's patent No. 3,209,856 issued on September 28, 1962,[3] entitled "Method of Making a Meat Product" was valid and infringed by Hormel. We affirm.

*Background*

The '856 patent has a single claim which reads:

A method of making a food product in the form of a patty comprising applying a coating of crumbs of breading material to a slice of raw meat and subsequently compressing said slice under pressure great enough to force the crumbs deeply into the meat, to substantially reduce the thickness of the slice, to expand the area of the slice approximately 100 to 150 percent, and to cause the slice to be impregnated with the crumbs substantially throughout its thickness.

In its commercial application by the parties, the meat is pork loin and the cooked patty product is known as pork loin fritters.

January 9, 1976, Central Soya brought a civil action in the United States District Court for the Western District of Oklahoma seeking injunctive and compensatory relief for patent infringement. Hormel denied infringement and counterclaimed for invalidity of the '856 patent. August 10, 1979, the district court, after bifurcating the case, found the patent valid and infringed, entered a permanent injunction restraining Hormel from further infringement, and held plaintiff entitled to an accounting. That judgment was affirmed on appeal. After a separate trial to determine damages, the district court entered a judgment finding that Hormel willfully and deliberately infringed the '856 patent, and awarded Central Soya the total sum of $476,080.93. The district court said its holding of willful infringement was based on the following facts:

(1) Thomas Gibbons, Plaintiff's highly experienced and knowledgeable employee in making breaded pork loin fritters and the system and equipment set up for doing so, left Plaintiff's employ in Decem-

---

1. 645 F.2d 847, 209 USPQ 915 (1981).

2. Daugherty, J., 205 USPQ 421 (1979).

3. The patent in suit, hereinafter '856, was issued to the inventor, Fred W. Luker, and his assignee, John S. Marten. Subsequent to its issuance, Marten assigned the patent to Central Soya.

ber of 1969 and was hired by Defendant in January, 1970,

(2) Shortly after being employed by Defendant, Gibbons started acquiring the necessary components to duplicate Plaintiff's system for making breaded pork loin fritters to include obtaining a squeeze roll unit from Plaintiff's supplier thereof,

(3) In May, 1970, Defendant's legal department became concerned about infringing Plaintiff's patent,

(4) In June, 1970, the opinion of an outside patent law firm was sought,

(5) In September, 1970, such firm furnished its opinion stating that infringement of Plaintiff's patent could be avoided if Defendant would squeeze the meat slices so that their expansion would be under 100 percent,

(6) Such firm also advised that Defendant's production of breaded pork loin fritters if possible be done within the jurisdiction of the United States Court of Appeals for the Eighth Circuit, as such Circuit has not held a patent either valid or infringed within recent history,

(7) The opinion of such firm relied on the Ray patent (Patent No. 2,845,040) which was a file wrapper reference previously considered by the Patent Office,

(8) Defendant's activities in obtaining the breaded pork loin fritter business from two large accounts of Plaintiff's,

(9) Defendant's written expression and belief that it could proceed with Plaintiff's former employee and Plaintiff's breaded pork loin fritter manufacturing method and process with some justification or safety as Defendant was "too good a customer" of Plaintiff for the latter to bring suit for patent infringement,

(10) The creation of a breaded pork loin fritter manufacturing line under Gibbons' direction which was a copy of all the elements and steps of Plaintiff's line on which the patent was based,

(11) Defendant's failure to measure the percentage expansion of its breaded pork loin fritters at and from the time of its first production in February, 1973 until June of 1975 notwithstanding the importance of this to the issue of infringement as related by its outside patent counsel,

(12) Gibbons' testimony that the spacing of the squeeze rolls in Plaintiff's and Defendant's operation were approximately the same,

(13) Defendant's failure to seek an updated legal opinion at the time of its first production in February, 1973, and,

(14) Defendant's turning to Ranch Hand for the same product when it saw fit to stop its own manufacturing line of breaded pork loin fritters.

The first opinion of the district court, note 2 supra, thoroughly addressed the substantive background and familiarity therewith will be presumed.

### Issues On Appeal

1. Whether the district court's finding of willful infringement was clearly erroneous and, accordingly, whether the award of double damages, attorney fees, and prejudgment interest was correct;

2. Whether the inclusion of "expenses" as a part of an award of attorney fees was proper under 35 U.S.C. § 285;

3. Whether this court should review the Tenth Circuit's decision on appeal of the liability portion of this case; and

4. Whether the award of lost profits, as the measure of damages for infringement of a method patent, was clearly erroneous.

### OPINION

#### Willful Infringement

On appeal, Hormel does not argue that any of the foregoing district court findings of fact are clearly erroneous; rather, it argues that any inference of willful infringement, justifying the district court's assessment of double damages, is negated *solely* because Hormel first sought and then followed the advice of counsel. Hormel argues, first, good faith reliance on counsel's advice that "there is a reasonably good chance that the patent might be held invalid," said advice being based solely on a

review of the prior art appearing in the patent's file history. Section 282 of Title 35 U.S.C. assigns a burden which is most formidable when the party asserting invalidity relies upon prior art considered by the Patent and Trademark Office (PTO). While we recognize that counsel's opinion on validity is evidence to be weighed towards a determination of good faith, it is not dispositive. *General Electric Co. v. Sciaky Bros.,* 415 F.2d 1068, 1073, 163 USPQ 257, 261 (6th Cir.1969). It is necessary to look at "the totality of the circumstances presented in the case," *Underwater Devices Inc. v. Morrison-Knudsen Co.,* 717 F.2d 1380, 1390, 219 USPQ 569, 577 (Fed.Cir.1983), in determining whether a reasonable person would prudently conduct himself with any confidence that the courts might hold the patent invalid. The district court extensively reviewed the surrounding circumstances, as exemplified by its findings of fact, supra, and Hormel has failed to show us either that those findings of fact were clearly erroneous, or that the holding of willful infringement based thereon was clearly erroneous. In short, the attorney's advice, based solely on file history prior art, *does not by itself* raise an inference of good faith substantial enough to convince us that the trial court's determination of willful infringement was clearly erroneous.

■ Secondly, Hormel asserts that it relied upon attorney opinions "before and after engaging in any of the acts charged to be an infringement of the patent in suit," and "operated within the parameters set forth in those opinions for avoiding infringement ...." While we agree that reliance is an important factor in determining good faith, there is no support for Hormel's assertion of reliance in the record. Moreover, it is in direct contradiction with the district court's findings of fact. The opinion letter, discussed above, stated: "I believe that Hormel is reasonably safe in manufacturing the meat product if it can do so by expanding the area [of the patty] less than 100%" and "the further away from 100% it can stay, *the less likely it is to infringe* the Luker [Central Soya] patent." (Emphasis ours.) Hormel was on notice of Central Soya's patent rights and had an affirmative duty to exercise due care to determine whether or not it was infringing. *Underwater Devices,* supra, 717 F.2d at 1389, 219 USPQ at 576. Although Hormel sought its counsel's advice prior to production, Hormel waited 2 years "post-production" to measure its patties to determine the extent of expansion. Such inaction is inconsistent with the assertion of good faith reliance. Even though the measurement, once taken, showed that the expansion of the patties was within the range recommended by counsel, that fact is not probative of good faith reliance, nor is it probative of whether infringement occurred during the prior 2 years since the measurement was taken after the inclusion of a molding press in the production line which had an effect on the amount of expansion. Hormel's intentional disregard of its counsel's opinion negates any inference of good faith, placing Hormel in the same position as one who failed to secure the advice of counsel. *See Milgo Electronic Corp. v. United Business Communications, Inc.,* 623 F.2d 645, 665, 206 USPQ 481, 498 (10th Cir.), *cert. denied,* 449 U.S. 1066, 101 S.Ct. 794, 66 L.Ed.2d 611 (1980).

■ To overcome the district court's holding of willful infringement, Hormel had not only to show an opinion from competent counsel but also that it had exercised reasonable and good faith adherence to the analysis and advice therein. Hormel's assertions on appeal taken in the context of the totality of the circumstances shown by the district court's findings of fact, do not persuade us either that the trial court's finding of willfulness was clearly erroneous or that the doubling of damages was an abuse of discretion.

### Expenses

The statute, 35 U.S.C. § 285, provides that a court "in exceptional cases may award reasonable attorney fees to the prevailing party." The trial judge, based on Hormel's willful infringement, found this case to be "exceptional" and awarded Central Soya $100,000 in attorney fees and $29,000 in expenses.

Hormel argues "that the inclusion of 'expenses' ... was an improper interpretation and expansion ... of ... § 285, and, accordingly, should be reversed as a matter of law." We disagree.

 The purpose of § 285 is, in a proper case and in the discretion of the trial judge, to compensate the prevailing party for its monetary outlays in the prosecution or defense of the suit. *Codex Corp. v. Milgo Electronic Corp.*, 541 F.Supp. 1198, 1201, 217 USPQ 878, 879 (D.Mass.1982) ("The compensatory purpose of § 285 is best served if the prevailing party is allowed to recover his reasonable expenses in prosecuting the entire action.") We interpret attorney fees to include those sums that the prevailing party incurs in the preparation for and performance of legal services related to the suit. *See Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1068, 219 USPQ 670, 678 (Fed.Cir.1983); *Milgo Electronic*, supra, 623 F.2d at 666–67, 206 USPQ at 498–99; *Kori Corp. v. Wilco Marsh Buggies and Draglines, Inc.*, 217 USPQ 1302, 1311 (E.D.La.1983); *Codex*, supra, (§ 285 held to include lawyer's fees for time spent on the issue of attorney fees, disbursements, non-legal personnel, and paralegal personnel) (citations omitted).

When § 285 was adopted in its present form in the 1952 act, the only change from the prior statute, R.S. 4921, was the addition of the phrase "in exceptional cases," which was added to discourage conduct which fell within the scope of "exceptional," by requiring the party acting exceptionally to bear the expenses of the opposing party. *See* P.J. Federico, "Commentary on the New Patent Act," 35 USCA at p. 56. It would be inconsistent with the intent of § 285 to limit the prevailing party to something less.

 Accordingly, we conclude that the award of expenses was properly within the scope of § 285. No showing has been made that the district court's award was clearly erroneous or that it abused its discretion in determining the amount.

## Measure of Damages

Section 284 of the statute provides, in pertinent part, that "the court shall award the claimant damages adequate to compensate for the infringement...." As this court recently stated, "under § 284 only 'damages' may be recovered by a patent holder," because damages represent "compensation for pecuniary loss he [the patent holder] suffered from the infringement...." *Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1560, 219 USPQ 377, 384 (Fed. Cir.1983), *citing Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507, 84 S.Ct. 1526, 1543, 12 L.Ed.2d 457, 141 USPQ 681, 694 (1964) (brackets in original). The Supreme Court in *Aro* went on to say, speaking of "damages,"

> They have been said to constitute 'the difference between his pecuniary condition after the infringement, and what his condition could have been if the infringement had not occurred.' ... The question to be asked in determining damages is 'how much had the Patent Holder and Licensee suffered by the infringement. And that question [is] primarily: *had the Infringer not infringed, what would the Patent Holder-Licensee have made?*' [Emphasis ours, citations omitted, brackets in original.]

*See General Motors Corp. v. Devex Corp.*, — U.S. ——, 103 S.Ct. 2058, 76 L.Ed.2d 211, 217 USPQ 1185 (1983).

In holding that the patentee could recover damages for infringement in the form of lost profits, the trial court said:

> Plaintiff [Central Soya] must present affirmative proof of (1) demand for the patented product in the marketplace, (2) Plaintiff's production and marketing capacity to meet the demand, (3) the absence of acceptable non-infringing substitutes and (4) detailed computations on the loss of profits.

This statement was taken in substance from *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156, 197 USPQ 726, 729–30 (6th Cir.1978) (authority and cases cited).

Hormel asserts on appeal that the third and fourth *Panduit* factors have not been met by Central Soya. As to factors (1) demand and (2) capacity, Hormel acknowledges that Central Soya met its burden of proof.

As to the absence of acceptable substitutes, factor (3), the trial court, in finding plaintiff had met its burden of proof, held that

> there was no acceptable non-infringing substitute for breaded pork loin fritters made by Plaintiff's patented method because no other breaded sliced pork product would have both the appearance and mouth feel developed by Plaintiff's method of embedding bread crumbs in a slice of meat.... Defendant's evidence mentions a few other alleged makers of breaded pork loin fritters, but the Court finds no evidence that they were non-infringing makers of breaded pork loin fritters and at most the scale of their operations was insignificant in the market.[4]

Hormel argues that Central Soya had the burden to prove that "the breaded pork loin products of these companies ... were made in accordance with the sole process claim of the '856 patent." We disagree with that interpretation of the third element of the *Panduit* formula. The dispositive determination at trial, for which Central Soya had the burden of proof, was whether or not there was an acceptable substitute on the market. It would be redundant to require Central Soya to additionally prove either infringement or non-infringement. Such determinations are not necessary to a determination that acceptable substitutes do or do not exist, notwithstanding what the opinion in *Panduit* says.[5]

■ It is Hormel's burden to show us why the trial court holding that acceptable substitutes did not exist was clearly errone-

ous. Hormel has failed to make that showing.

As to factor 4, Hormel argues that the award of "lost profits damages which were based upon Hormel's sale of breaded pork loin products which were not covered by the [process] patent" was an "improper extension of the rights granted under [the] patent." The argument is that the award of lost profits is improper since all claims directed to the *product* were voluntarily surrendered during prosecution.

Hormel confuses the measure of damages with the issue of infringement. The proper measure of damages is that amount which will compensate the patent holder for his pecuniary loss attributable to the infringing acts. 35 U.S.C. § 284.

The trial court found:

> The demand for products made by Plaintiff's process to the exclusion of any other breaded pork loin fritter as a substitute is shown by evidence that *80% of Defendant's sales were to two former customers of Plaintiff* obtained by Defendant as its customers for breaded pork loin fritters when Defendant started infringing Plaintiff's patent. The evidence indicates these customers urged Defendant to produce a breaded pork loin fritter like Plaintiff's ....
>
> ... There is a reasonable probability that but for Defendant's infringement, Plaintiff would also have sold at least half of the remaining 20% of Defendant's sales. [Emphasis ours.]

■ The trial court, after determining that 90% of Hormel's sales would have been made by Central Soya, found that Central Soya kept detailed computations in the regular course of business on the profit margin of its breaded pork loin fritters. It found further that these records met the requirements of the fourth *Panduit* factor, and

---

4. Rather, these other makers produced breaded meat products which the trial court found to be either inferior or different. The trial court stated "that there was no way to make a competitive breaded pork loin fritter without using squeeze rolls [the '856 process]...." This is substantiated by the record, from which it is clear, as the trial court said, that the Central

Soya patty was "the real model or the standard of the industry...."

5. We do not address whether and how Central Soya could have proven lost profits other than by the *Panduit* test. *See e.g. Lam v. Johns-Manville Corp.,* supra.

awarded Central Soya lost profits of $152,-982 based on 90% of Hormel's sales of its infringing breaded pork loin fritters. Hormel has not shown us that the trial court's method of computation was a clearly erroneous application of § 284.

### Law of The Case

Hormel requests us to review and reverse the Tenth Circuit's liability determination. Central Soya generously says that it would not be "improper" for us to do so but that it would be "inadvisable." We decline to review.

Procedurally, we note why this appeal did not return to the Tenth Circuit. This case was bifurcated as between liability and damages. The first appeal took place prior to October 1, 1982, the effective date of the law establishing this court. *Federal Courts Improvement Act of 1982,* Pub.L. 97–164, 96 Stat. §§ 420, 403(e). The present appeal, on damages, was filed after the effective date. Thus, we now have exclusive subject matter jurisdiction of the case. *Id.,* § 127(a), amending 28 U.S.C. § 1295.

Under well established principles, the Tenth Circuit's determination is entitled to great deference under the law of the case doctrine, which "expresses the practice of courts generally to refuse to reopen what has been decided ...." *Messenger v. Anderson,* 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912). This doctrine was judicially created to ensure judicial efficiency and to prevent the possibility of endless litigation. As the Supreme Court stated at an early time, "there would be no end to a suit if every obstinate litigant could, by repeated appeals, compel a court to listen to criticisms on their opinions, or speculate of chances from changes of its members." *Robert v. Cooper,* 61 U.S. 467, 481, 20 Howard 467, 481, 15 L.Ed. 687 (1857). As one of our predecessor courts recently reiterated: "No litigant deserves an opportunity to go over the same ground twice, hoping that the passage of time or changes in the composition of the court will provide a more favorable result the second time." *United States v. Turtle Mountain Band of Chippewa Indians,* 612 F.2d 517, 520, 222 Ct.Cl. 1 (1979).

■ This appeal presents unusual circumstances in that the same court is not being asked to reconsider its own prior decision. Rather, we are being asked to review the decision of the Tenth Circuit Court of Appeals in a case over which we have exclusive jurisdiction by virtue of an Act of Congress. In our opinion, the purpose and intent of the law of the case doctrine is fully applicable to this transitory situation, and all interests will best be served by adherence to it. *Moore's Federal Practice,* ¶ 0.404 [4.–4] at 136 (1983). While the law of the case doctrine is applicable, and acts as "a heavy deterrent to vacillation on arguable issues," *Moore's* supra, ¶ 0.404[1] at 119, it is not an inexorable command, and should be applied

> as a matter of sound judicial practice, under which a court generally adheres to a decision in a prior appeal in the case unless one of three "exceptional circumstances" exists: "the evidence on a subsequent trial was substantially different, controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice."

*Short v. United States,* 661 F.2d 150, 154, 228 Ct.Cl. 535 (1981); *Northern Helex Co. v. United States,* 634 F.2d 557, 561, 225 Ct.Cl. 194 (1980); *United States v. Turtle Mountain Band of Chippewa Indians,* supra; all quoting *White v. Murtha,* 377 F.2d 428, 431 (5th Cir.1967).

Hormel asserts that the third situation above exists—clearly erroneous—arguing that the Tenth Circuit failed to apply the doctrine of "file wrapper estoppel" to the language change made in the claim of patent '856, namely, replacing "substantially" with "approximately 100 to 150 per cent." Hormel argues that the sole purpose of the change was to insert a "limitation in response to rejections based on prior art to obtain allowance of that claim ...."

We have examined the file history of the '856 patent for the sole purpose of determining whether the Tenth Circuit's conclusion was clearly erroneous and would

work manifest injustice. We cannot so conclude. Appellant has had its day in court on that question. We will not disturb the holding of the Tenth Circuit.

### Conclusion

The decision of the district court on the accounting is in all respects *affirmed.*

AFFIRMED.

NICHOLS, Senior Circuit Judge, concurring.

I join in this able opinion in all its parts, and in the judgment. My only reason for writing separately is to comment on the defense that the infringement was not willful, and therefore damages should not be doubled nor should counsel fees be awarded. The appellant's theory is that it relied in good faith on advice of its own counsel. That theory evidently imposes a heavy responsibility upon counsel, who by suitable magic words can reduce an infringer's liability to what may well not exceed the price of a license or what the price would have been had a license been purchaseable.

In this case, an outside firm advised that infringement could be avoided if certain precautions were taken to avoid "as far as practicable" producing a meat fritter, like plaintiff's, by squeezing and horizontal expansion, as plaintiff did it. How far was "practicable" was left uncertain, but the opinion states—

> It is advisable that Hormel stay as far from "approximately" 100% expansion as practicable, while still producing an acceptable product. As I think you understand, the further away from 100% it can stay, the less likely it is to infringe the Luker patent.

> Since a product undergoing considerably less than 100% expansion is quite *arguably* outside the scope of the claim, I believe Hormel can safely manufacture such a product. [Emphasis supplied.]

Thus the writer seems to say that if his directions are followed, he will be able to make a pretty good argument that the patent is not infringed. It does not appear that Hormel made much of an effort, if any, before litigation started, to follow these directions, but that is not my point. My point is that this letter is far short of an unequivocal statement that if Hormel follows the writer's guidelines, infringement will not result. Only, "quite arguably," this will be the case.

The letter closes with the cynical advice, which has caused so much amusement among readers for whom it was obviously not written, that if Hormel chose to go ahead and produce the questioned product, "as an added safety precaution," it should do so in the jurisdiction of the Eighth Circuit Court of Appeals. The writer says: "the Eighth Circuit has not held a patent either valid or infringed within recent history." He goes on to explain in detail where Hormel could operate and be within the Eighth Circuit's domain. Hormel did not take this advice either: it operated, alas for it, in the Tenth Circuit.

Conclusion as to validity is challenged on a ground I do not discuss, *i.e.,* that the source of validity doubt was prior art known to and considered by the patent office before it granted the patent. My problem lies elsewhere.

Reading the letter as a whole, it is clear the writer has not full confidence that the patent is invalid, or that the precautions recommended by him will suffice to avoid infringement. The best he can say is that "quite arguably" this will be the outcome of possible litigation. So, in effect, we are asked to say Hormel acted in good faith, not because its counsel assured it it would be doing right, but because he thought he could make a plausible argument. And the feeble force of this, as probative of client good faith, further suffers as we see the cynical suggestion that the operation should be so located that it would be tested in the Eighth Circuit. I do not, of course, have before me any basis for an opinion whether the writer's assessment of an infringer's chances in that circuit was, when written, valid or not. It was *his* opinion, not the putative future holdings of the Eighth Circuit, that were supposed to guide the client.

I, for one, would never vote to remit damages for willful infringement, or counsel fees, on the basis of equivocal pro-

nouncements that nowhere draw a clear line for the client, as to what would be right and what would be wrong, under the law. Here the lawyer has tried to give the client a realistic, if cynical, assessment, but not a clear legal opinion. If the client chose to act on it, the decision was his and presumably he shared the attorney's assessment of the chances. His are the consequences. None of this ritual has anything to do with good faith or the lack of it and, therefore, the involved letter has no probative value to demonstrate clear error in the trial court's findings and conclusions as to willfulness of the infringement.