871 F.2d 1097
 10 U.S.P.Q.2d 1952
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
AMP INCORPORATED, Plaintiff-Appellant,
v.
BURNDY CORPORATION, Defendant-Cross-Appellant.
 Nos. 88-1560, 88-1561.
 United States Court of Appeals, Federal Circuit.
 March 23, 1989.
Suggestion for Rehearing In Banc Declined June 16, 1989.
 
 Before NIES, PAULINE NEWMAN and MICHEL, Circuit Judges.
 NIES, Circuit Judge.
 
 DECISION
 
 1
 Both parties appeal from the judgment of the United States District Court for the District of Connecticut, AMP Inc. v. Burndy Corp., Civil No. B-82-669, slip op. (D.Conn. July 21, 1988) (Dorsey, J.) (unpublished), in a patent infringement action brought by AMP Incorporated asserting infringement of United States Patent No. 4,186,982 ('982). We affirm the district court's judgment in all respects.
 
 OPINION
 I. Infringement
 
 2
 The '982 patent covers a contact pin, split or sheared to form at least two legs, which is inserted into the plated through hole (PTH) of a printed circuit board (PCB). Before insertion, the legs have a cross-sectional area larger than the PTH diameter. The legs are offset so that as the pin is inserted they slide toward each other, creating a frictional force along their common shear plane. That force joins the elastic, spring-like force generated as the legs are forced together to push against the wall of the PTH. Thus, mechanical and electrical contact between the pin and PCB is maintained.
 
 
 3
 A. District Court Did Not "Disregard" the Prosecution
 
 History
 
 4
 Burndy argues that the court clearly erred in finding that its three-legged pins infringe, because the court disregarded certain statements, made early in the prosecution history, which would restrict the number of legs to two. Each independent claim specifies "at least two legs" or a contact "comprising" two legs. As the district court stated, such claim language does not restrict the claimed invention to two legs. See Water Technologies Corp. v. Calco, Ltd., 850 F.2d 660, 666, 7 USPQ2d 1097, 1102 (Fed.Cir.1988). Moreover, the specification specifically states, "[i]n accordance with a further feature of the invention it will be apparent that the number of legs can exceed two." ' 982 Spec., col. 4, lines 62-64. To the extent statements made during the earlier phases of the prosecution history might contradict the later prosecution history and the issued specification and claim language, the language of the latter prevails here.
 
 B. District Court Applied Claim Limitations
 
 5
 Burndy asserts that its three-legged pins do not meet the claim limitations requiring a decrease in cross-sectional dimension. The court specifically found that this limitation was met. Slip op. at 24. Burndy argues that the court's statement that Burndy's three-legged pins increased in cross-sectional area is inconsistent with the court's finding of infringement. We disagree. Cross-sectional dimension and cross-sectional area are not the same thing.
 
 
 6
 Similarly, the court fully considered Burndy's argument that its pins avoid infringement because the three legs resist compliance with the PTH by torsional, not sliding frictional, movement and do not have co-planar shear surfaces. Id. at 23-24. Evidence in the record, including witness testimony indicating that friction is essential to the three-legged pins and photomicrographs showing sliding engagement and friction in the three-leg pins, supports the findings of the district court. Accordingly, we cannot hold such findings clearly erroneous.
 
 
 7
 C. District Court's Analysis Is Not "Incomprehensible"
 
 
 8
 Burndy asserts that the court's "entire infringement opinion [is] incomprehensible" because Claims 7 and 51 are identical to Claim 36, yet the court found Claim 36 not infringed and Claims 7 and 51 infringed. We disagree. Although AMP asserted that Claim 36 was infringed, the court simply never ruled on that claim. Moreover, Claims 7, 36, and 51 cannot be "identical" because they are all dependent claims, each depending from different independent claims. See 35 U.S.C. Sec. 112 (1982) (dependent claim incorporates limitations of independent claim from which it depends).
 
 
 9
 Finally, the court neither misstated nor misapplied the doctrine of equivalents in stating that the doctrine applied where there otherwise was literal infringement. In context, the court was clearly referring to Burndy's argument that it did not infringe under the reverse doctrine of equivalents. That doctrine only applies where a claim literally reads on an accused device.
 
 
 10
 The judgment of the court that Burndy's three-legged pins infringe the asserted '982 patent claims is affirmed.
 
 II. Willfulness of Burndy's Infringement
 
 11
 The court found Burndy's conduct in marketing its two-legged pin to be willful infringement, but not willful in marketing the three-legged pin. Each party seeks to overturn the court's ruling which was adverse to it. There is conflicting evidence on these issues. A party cannot establish that findings are clearly erroneous merely by pointing to evidence which might support a contrary finding. See, e.g., Anderson v. City of Bessemer City, 470 U.S. 564, 574 (1985) ("This [clearly erroneous] standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently.").
 
 
 12
 A finding of willfulness is a finding of fact based on the totality of the circumstances. See, e.g., Central Soya Co. v. Geo. A. Hormel & Co., 723 F.2d 1573, 1577, 220 USPQ 490, 492 (Fed.Cir.1983). The district court did not fail to consider any of the circumstances present here. Each party simply asks us to reweigh the evidence and reach a different result. That is not our function. Polaroid Corp. v. Eastman Kodak Co., 789 F.2d 1556, 1558, 229 USPQ 561, 562 (Fed.Cir.), cert. denied, 479 U.S. 850 (1986). Rather, we could overturn the court's findings here only if we were persuaded that the court seriously misjudged the evidence. Neither party has convinced us that either the court's finding of willful infringement with respect to the accused two-legged pin or its finding of no willful infringement with respect to three-legged pins is clearly erroneous.
 
 III. Attorney Fees
 
 13
 The district court awarded partial attorney fees to AMP limited to work related to Burndy's two-legged pins. A typical justification for finding a case exceptional is a finding of willful infringement. See, e.g., S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc., 781 F.2d 198, 200-01, 228 USPQ 367, 368-69 (Fed.Cir.1986). The parties challenge the exceptional conduct findings merely by reiterating their challenges to the court's willfulness findings. In view of our affirmance on the issue of willfulness, we also affirm the district court's findings on exceptionality and its partial award of fees to AMP.
 
 IV. On Sale Bar
 
 14
 Burndy has failed to convince us of error in the district court's holding that the '982 patent is entitled to a 1973 filing date. Accordingly, AMP's 1974 sales do not invalidate its patent. The '982 patent issued on AMP's fifth continuation application, filed in 1977. Burndy asserts that AMP's earlier applications did not disclose a "dominant" (over the elastic spring force of the legs) friction force between the sheared surfaces of the pin's legs or show the legs moving sufficiently to exceed the metal's elastic limit, causing permanent deformation, after insertion of the pin in the PTH of the PCB.
 
 
 15
 None of the asserted claims have a "dominant" friction force limitation. The specification notes that the "frictional force usually is substantially greater than the spring-like force." ' 982 Spec., col. 3, lines 27-28 (emphasis added). It also states that the friction force is "added" and "needed to meet the requirements of most applications." ' 982 Spec., col. 7, lines 19-26 (emphasis added). Accordingly, the fact that friction may dominate neither was newly introduced into the fifth application nor is a requirement of the asserted claims in that application.
 
 
 16
 It is true that the first four applications contain claims requiring that the legs move within their elastic limits. As the district court found, the claims of the fifth application do not contain that limitation. The '982 specification states, moreover, "that the movement of the legs together is usually over a distance which exceeds the elastic limits of the legs so that some permanent deformation of the legs will occur when they are inserted." ' 982 Spec., col. 7, lines 38-41 (emphasis added). The district court did not, nor do we, read into the claims of the fifth application, from the specification language and the absence of a claim limitation addressing elasticity, a new matter limitation requiring movement of the legs outside their elastic limit.[1]
 
 V. Obviousness of the '982 Patent Claims
 
 17
 Looking at the evidence in the light most favorable to Burndy, we conclude that Burndy did not establish facts which lead to the legal conclusion that the invention of the '982 patent would have been obvious. We agree with Burndy that the district court did not fully articulate the Graham analysis. The court also misused terms in its analysis. For example, after explaining why each pertinent reference was distinguishable from the subject invention, the court would conclude with the statement that the reference "does not constitute prior art." The Kurtz, Norwood, and Kinkaid patents are prior art to the '982 invention.[2] However, the errors of the district court in its obviousness analysis are harmless. See 28 U.S.C. Sec. 2111 (1982). Kurtz, Kinkaid, and Norwood presented no obstacle to reexamination of the asserted claims of the '982 patent, and Burndy fails to persuade us that the teachings of these references render the invention of the '982 patent obvious. It argues, for example, that the nonelectrical pin disclosed in Norwood is "identical" to the '982 contact pin. There may be a superficial resemblance, but we must agree with the court and the PTO that Norwood does not disclose forces perpendicular to the shear plane between the legs. Having considered all of Burndy's arguments against patentability, we conclude that the presumption of validity was not overcome.
 
 VI. Costs
 
 18
 Each party shall bear its respective costs of this appeal, with the exception that AMP is awarded the costs it incurred in opposing Burndy's motion to order that trial exhibit No. 7L be transmitted to this court for purposes of oral argument.
 
 
 
 [1]
 The parties debate whether the PTO reached the new matter issue during reexamination of the '982 patent. Although the district court found that the PTO did reach the issue, and rejected Burndy's argument, the court did not rely solely on that finding. Accordingly, we need not and do not decide whether the PTO reached the issue of new matter
 
 
 [2]
 AMP makes convoluted, unhelpful arguments attempting to explain why the references were not prior art. It is no wonder the term was misused by the court