SHILEY, INC., etc., Plaintiff,

v.

BENTLEY LABORATORIES, INC., etc., Defendant.

BENTLEY LABORATORIES, INC., etc., Counter-Claimant,

v.

SHILEY, INC., etc., Counter-Defendant.

No. CV 81–3262 AWT.

United States District Court, C.D. California.

Feb. 4, 1985.

John E. Kidd, Gidon D. Stern, Stephen J. Harbulak, Pennie & Edmonds, New York City, Darrell L. Olson, Knobbe, Martens, Olson & Bear, Newport Beach, Cal., for plaintiff.

R. Douglas Lyon, Coe A. Bloomberg, Allan W. Jansen, David B. Murphy, William Steffin, Lyon & Lyon, Los Angeles, Cal., for defendant.

## MEMORANDUM OPINION

TASHIMA, District Judge.

This is a patent infringement action in which defendant has counterclaimed for a declaration of invalidity. The patents in suit pertain to a bubble blood oxygenator (the "lung" portion of the heart-lung machine employed during open-heart surgery). The action was tried to a jury which, after a lengthy trial, rendered its verdict for plaintiff on all issues. The special verdict included, *inter alia*, the jury's findings that none of the claims in suit was invalid, that plaintiff was entitled to recover for its lost profits in the amount of $17,528,000, that a reasonable royalty is twelve percent (12%) of the selling price of the accused device, that plaintiff was not guilty of inequitable conduct before the United States Patent and Trademark Office and, most importantly to our present inquiry, that defendant's infringement of plaintiff's patents was willful.

The Court heretofore has denied defendant's motion for new trial and motion for judgment notwithstanding the verdict on all grounds, except willful infringement, on which decision was reserved. Before me now is decision on that JNOV issue and plaintiff's motions for: (1) increased damages; and (2) an injunction.[1] For the reasons hereinafter set forth, I grant both of plaintiff's motions and deny defendant's JNOV motion.

### 1. *Increased Damages—Willfulness*

Plaintiff, after verdict, has moved for increased damages in the maximum amount, under 35 U.S.C. § 284, which provides in part as follows:

When the damages are not found by a jury, the court shall assess them. In either event the court may increase the damages up to three times the amount found or assessed.

As stated, the jury, by its special verdict, found that defendant's infringement was willful. The issue now before the Court is whether that finding is binding or only advisory, *i.e.*, whether, when a jury is demanded on all issues triable to a jury, the issue is one for the jury or for the Court.

The issue has not been definitively addressed by the case law. The non-Federal Circuit cases which have confronted the issue are almost evenly split. *Compare Yoder Bros., Inc. v. California-Florida Plant Corp.*, 537 F.2d 1347, 1383 (5th Cir. 1976), *cert. denied*, 429 U.S. 1094, 97 S.Ct. 1108, 51 L.Ed.2d 540 (1977); *White v. Mar-Bel, Inc.*, 509 F.2d 287, 292 (5th Cir.1975); *Medtronic, Inc. v. Catalyst Research Corp.*, 547 F.Supp. 401, 405 (D.Minn.1982) (each holding the jury's finding to be advisory) *with Creative Cookware, Inc. v. Northland Aluminum*, 678 F.2d 746, 749 (8th Cir.1982); *Norfin, Inc. v. International Business Mach.*, 625 F.2d 357, 366 (10th Cir.1980) (both holding that the jury's verdict on willfulness is to be disturbed on appeal only where clearly erroneous). Moreover, none of these cases has attempted any systematic analysis of the problem—their pronouncements are conclusory. There is no controlling case law from the Federal Circuit.[2]

Section 284 appears clearly to indicate that whether infringement and damages are tried to the jury or the court, the authority to increase damages is reserved to the court—"In either event, the court may increase the damages...." *See Topliff v. Topliff*, 145 U.S. 156, 174, 12 S.Ct. 825, 832, 36 L.Ed. 658 (1892); *Swofford v. B & W, Inc.*, 336 F.2d 406, 412–13 (5th Cir.), *cert. denied*, 379 U.S. 962, 85 S.Ct. 653, 13

---

1. There are also pending three additional motions by plaintiff for: (1) attorneys' fees; (2) prejudgment interest; and (3) a post-verdict accounting. These motions are disposed of concurrently herewith by an unpublished Supplemental Memorandum.

2. In support of its position that willfulness is an issue to be decided by the jury, plaintiff relies, in part, on pronouncements from the Federal Circuit that the issue is a question of fact. *E.g., Leinoff v. Louis Milona & Sons, Inc.*, 726 F.2d 734, 742 (Fed.Cir.1984); *Underwater Devices, Inc. v. Morrison-Knudsen Co.*, 717 F.2d 1380, 1389 (Fed.Cir.1983). Such cases shed no light on the issue of whether that question of fact should be decided by the jury or by the court.

L.Ed.2d 557 (1965) (court determination of increased damages issue does not violate constitutional right to jury trial).[3] However, the court's discretion to award increased damages is limited by the *judicially* imposed limitation that such damages may be awarded only in cases of willful infringement. *E.g., Lam, Inc. v. Johns-Manville Corp.,* 668 F.2d 462 (10th Cir.), *cert. denied,* 456 U.S. 1007, 102 S.Ct. 2298, 73 L.Ed.2d 1302 (1982); *Deere & Co. v. International Harvester Co.,* 658 F.2d 1137 (7th Cir.), *cert. denied,* 454 U.S. 969, 102 S.Ct. 514, 70 L.Ed.2d 386 (1981); *Leesona Corp. v. United States,* 599 F.2d 958, 969, 220 Ct.Cl. 234, *cert. denied,* 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979). Therefore, if, as plaintiff contends, the jury's finding of willfulness is binding on the court, much of the discretion vested by Congress in the court will have been shifted to the jury. If the jury should find that infringement was not willful, the court would be foreclosed from awarding increased damages. If, as in the case at bench, the jury does find willful infringement, the only issue remaining would appear to be the extent of increased damages. Certainly, a plaintiff who recovered no increased damages, despite a binding finding of willfulness, might have a fair case for abuse of discretion by the trial court.[4]

This analysis is confirmed by an examination of the historical development of the discretionary treble damage provision. Both the original Patent Act of 1790, 1 Stat. 109, and the 1800 amendment, 2 Stat. 37, contained variations of a mandatory treble damage provision. *See Seymour v. McCormick,* 57 U.S. (16 How.) 479, 488, 14 L.Ed. 1024 (1853). The Supreme Court characterized the apparent dissatisfaction with this "horizontal rule equally affecting all cases" thusly:

> Experience had shown the very great injustice of a horizontal rule equally affecting all cases, without regard to their peculiar merits. The defendant who acted in ignorance or good faith, claiming under a junior patent, was made liable to the same penalty with the wanton and malicious pirate. This rule was manifestly unjust.

*Id.* The Court then made clear the respective roles of jury and judge in the assessment of damages under the Patent Act of 1836, 5 Stat. 117:

> In order to obviate this injustice, the Patent Act of 1836 confines the jury to the assessment of "actual damages." The power to inflict vindictive or punitive damages is committed to the discretion and judgment of the court within the limit of trebling the actual damages found by the jury.

*Id.*

■ In short, acceptance of plaintiff's position would render meaningless Congress' clearly expressed intent in enacting the 1836 amendment to the Patent Act and subsequent reenactments of that provision that the issue of increased damages is to be determined by the court and not by the jury. I, therefore, conclude that the jury's verdict on the issue of willful infringement is advisory only.[5] I turn now to the issue of whether defendant's infringement in this case was or was not willful.

Defendant here obtained several of plaintiff's devices prior to bringing its own oxygenators onto the market. These early devices of plaintiff were marked "patent pending." It appears that defendant then engaged in "reverse engineering." It or-

---

**3.** Neither party contends that resolution of this issue implicates the Seventh Amendment right to trial by jury. *See generally Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962); *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959).

**4.** This appears to be the standard of review on appeal of this issue. *Rosemount, Inc. v. Beckman Instruments, Inc.,* 727 F.2d 1540, 1548 (Fed. Cir.1984).

**5.** Because of this conclusion, defendant's motion under F.R.Civ.P. 50(b) for judgment notwithstanding the verdict on the issue of willful infringement is rendered moot and is denied for that reason. *See Perkin-Elmer Corp. v. Computervision Corp.,* 732 F.2d 888, 895 n. 5 (Fed.Cir. 1984) (JNOV motion applies only to *binding* jury verdicts).

dered a key component—a helically wound, helically ribbed coil—from plaintiff's supplier [6] and specifically ordered that the part be made to plaintiff's specifications. Defendant also had access to plaintiff's descriptive brochure. Defendant thereafter, within a few months, began marketing the infringing device. From these facts, plaintiff claims copying and such an inference is warranted; however, it is unnecessary to rely on this contention.

█ It is undisputed that defendant obtained a copy of the patent in issue within days of its issuance. It is now the law that:

> Where, as here, a potential infringer has actual notice of another's patent rights, he has an affirmative duty to exercise due care to determine whether or not he is infringing.

*Underwater Devices, Inc. v. Morrison-Knudsen Co.,* 717 F.2d 1380, 1389 (Fed.Cir. 1983). I find by clear and convincing evidence that defendant failed to do its affirmative duty to exercise due care; therefore, that its infringement was willful.

First, defendant claims that it promptly obtained an oral opinion in 1978. The totality of the testimony on this "oral opinion" is that when defendant's vice president of legal and medical affairs received "a copy of the front cover" of the patent in issue in early 1978, "the first time I had seen the patent," he called defendant's outside patent counsel [7] "who was writing the patents for me, and I said, 'Lets discuss this,' and we did. And we both agreed that it was a different device. It functioned different, and it was a totally different operating device." Counsel who engaged in this discussion was never called as a witness to explain the basis of his "opinion". In terms of the requirement of *Underwater Devices, id.* at 1390, this cannot even be characterized as legal advice or an opinion, much less as a competent opinion.

Two and one-half years later, by letter dated August 21, 1980, defendant received

a written opinion from its outside patent counsel. The letter itself notes that by that time the "BOS–10 oxygenator," the infringing device, "has been on sale for almost three years, for a substantial period of time." Thus, defendant here did not perform its affirmative duty which "includes, *inter alia,* the duty to seek and obtain competent legal advice from counsel *before* the initiation of any possible infringing activity. In this case, [defendant] obtained its counsel's advice *after* it commenced its infringing activities." *Id.* at 1390 (citations omitted; emphasis in original). Contrary to the strong suggestion in *Underwater Devices,* there is no evidence that counsel reviewed the file histories. In fact, the letter does not discuss validity at all and is limited to a narrow non-infringement opinion. Even that opinion is undercut by a subsequent letter, dated November 11, 1981, from counsel with the qualification that, "it is also true that a design change in the Bentley BOS–10 oxygenator to a heat exchange tube having individual annular ribs rather than continuous helical ribs will materially reduce, even on a worst case basis, Bentley's exposure to Shiley." The evidence also disclosed that defendant admittedly never conducted any search or study relating to invalidity, scope of enforceability of any claim, patentability of the claimed subject matter or infringement. In summary, I find that the credible evidence presents no good faith, reasonable basis for defendant to believe it had the right to commit the infringing acts. *Stickle v. Heublein, Inc.,* 716 F.2d 1550, 1565 (Fed.Cir.1983).

Based on this evidence, I conclude that defendant has failed to discharge its affirmative duty to exercise due care to determine whether or not it was infringing the patents in suit. I therefore find, based on "the totality of the circumstances presented in the case," *Central Soya Co. v. Geo. A. Hormel & Co.,* 723 F.2d 1573, 1577 (Fed.Cir.1983), that the infringement was

---

6. This component, the Turbotec coil, apparently was itself patented and not available from other suppliers.

7. The competency of counsel is not an issue.

wanton and willful.[8] It follows that this is a case in which increased damages may be awarded under § 284, in the Court's discretion. *Leinoff v. Louis Milona & Sons, Inc.*, 726 F.2d 734, 742 (Fed.Cir.1984). The amount of any increased award, as well as whether or not to make one, is also "within the discretion of the district court and will not be overturned absent a clear showing of abuse of discretion." *Rosemount, Inc. v. Beckman Instruments, Inc.*, 727 F.2d 1540, 1547–48 (Fed.Cir.1984) (upholding award of treble damages).

In exercising my discretion, I have in mind that increased damages under § 284 are punitive in nature—a primary purpose of such an award is to punish the wrongdoer and to deter like conduct in the future by way of example—to protect the integrity of our patent system. Having reviewed the entire trial record and based on the totality of the circumstances in this case, I conclude that double damages is an appropriate increased damage award. The jury having returned a verdict of actual damages in the sum of $17,528,000, I exercise my discretion and award a like amount, $17,528,000,[9] as increased damages for a total award of $35,056,000, before application of prejudgment interest, a post-verdict accounting and costs and attorneys' fees.

### 2. *Propriety of Injunctive Relief*

As indicated earlier, the patents in suit, U.S. Patent No. 4,065,264 and U.S. Patent No. 4,138,288, both pertain to bubble blood oxygenators. Blood oxygenators are used in open-heart by-pass surgery and the sales are substantial. The total market is in the range of $50–$100 million in annual sales. The parties here are two of the leading manufacturers and sellers. Plaintiff markets its "S" series of bubble blood oxygenators and defendant markets its "BOS" series of the same type oxygenator. Other types are available on the market, but the bubble type appears to be highly popular, if not the most popular type. In 1984, defendant sold well in excess of 100,000 units.

On the basis of the jury's special verdict, rejecting all claims of invalidity and finding that the accused device infringes all claims in suit of both patents,[10] plaintiff now moves for the issuance of a permanent injunction enjoining defendant from future infringement of the patents in suit.

Under 35 U.S.C. § 283, a court "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." Under this section, the decision whether to grant an injunction is thus within the judge's discretion. *Roche Prod. v. Bolar Pharmaceutical Co.*, 733 F.2d 858, 865 (Fed.Cir.1984); *Smith Int'l, Inc. v. Hughes Tool Co.*, 718 F.2d 1573 (Fed.Cir.1983). As a court of equity, the court must consider

---

**8.** All of the findings on willful infringement are made under the "by clear and convincing evidence" standard.

**9.** In addition to its lost profits award of $17,528,000, the jury also found that a reasonable royalty was 12 percent of the sales price of the infringing devices. Based on the uncontradicted evidence of such sales the 12 percent royalty would amount to $17,215,025. Plaintiff has elected the higher lost profits award and the double damage award is based on that award of actual damages. Should the lost profits verdict be disturbed on appeal, but the propriety of the reasonable royalty affirmed, I would exercise my discretion to then award increased damages in the sum of $17,215,025.

**10.** Under *Beacon Theatres,* 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988, the court must accept these fact determinations of the jury for purposes of making its determination on the equitable issues. There may be one exception. The special verdict included the jury's finding that none of the patent claims in suit was invalid for obviousness. The question of obviousness is ultimately a question of law. *Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545 (1966). In answering that question, however, the ultimate conclusion must be based on an adequate factual underpinning. It is "not error" to submit the question to the jury, if the jury is given "appropriate instructions" of the factual inquiry to be made. *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1547 (Fed.Cir. 1983). Here, the jury was fully instructed on the law of obviousness. Jury Instructions Given, 48(a) to 48(j). On this record, therefore, and in light of the case law, I fully accept the jury's special verdict that none of the patent claims in suit is invalid for obviousness.

all of the circumstances, including the adequacy of the legal remedy, irreparable injury, whether the public interest would be served, and hardship on the parties and third parties. *Roche*, 733 F.2d at 865–66; *Smith*, 718 F.2d at 1577–79.

In a patent infringement case, where the infringing device will continue to infringe and thus damage plaintiff in the future, monetary damages are generally considered to be inadequate. This inadequacy results from the nature of the patent right itself—the right to exclude others. As the court stated in *Smith Int'l*:

> Without the right to obtain an injunction, the right to exclude granted to the patentee would have only a fraction of the value it was intended to have, and would no longer be as great an incentive to engage in the toils of scientific and technological research.

718 F.2d at 1578. Here, plaintiff has satisfied this requirement. It is still producing its "S" line of oxygenators and its patents are being infringed by defendant's competing BOS oxygenators. Thus, monetary damages would not adequately compensate plaintiff for its loss of the right to exclude defendant. Moreover, where validity and continuing infringement have been established, irreparable injury is presumed. *Id.* at 1581.

That this case meets the foregoing requirements is not contested. The issue here is framed by defendant's contention that issuance of an injunction would disserve the public interest.

How the public interest will be affected must be considered in every injunction action. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312, 102 S.Ct. 1798, 1803, 72 L.Ed.2d 91 (1982). In *Roche*, the Federal Circuit held, "the standards of the public interest, not the requirements of private litigation, measure the propriety and need for injunctive relief in these cases...." 733 F.2d at 865–66 (quoting *Hecht Co. v. Bowles*, 321 U.S. 321, 331, 64 S.Ct. 587, 592, 88 L.Ed. 754 (1944)). Other courts have similarly considered the public interest in patent injunction cases. In *City of Milwaukee v. Activated Sludge*, 69 F.2d 577 (7th Cir.), *cert. denied*, 293 U.S. 576, 55 S.Ct. 87, 79 L.Ed. 673 (1934), injunctive relief to prevent future infringement of a patent was denied where the requested relief would have resulted in the closing of the city's sewage treatment plant. The court held that an injunction was inappropriate because the result would be to endanger the lives of over a half million people by forcing residents to dispose of their sewage in Lake Michigan. *Id.* at 593.

Defendant claims that removal of its oxygenators from the market will have an adverse effect on many candidates for open heart surgery. In support of this contention, it has filed numerous *ex parte* declarations of hospital administrators and perfusionists who use the BOS oxygenator exclusively.[11] The tenor of these declarations is that all of these declarants consider defendant's model to be "superior" to plaintiff's. Undoubtedly this (belief) is so, else, I presume, they would be among the hundreds of users of plaintiff's model. Suffice it to say, and I so find, that no credible evidence in the trial record supports any finding that either is objectively superior in performance or that either is defective or unsafe in any way or does not properly perform as intended and required in the operating room. The evidence amounts to no more than a mere expression of preference. It should be noted that the record contains ample evidence of institutions and individual perfusionists who use plaintiff's model exclusively and of those who use both models.

---

11. Paragraph 8.7 of the Pretrial Conference Order listed as an issue of law preserved for trial whether, if infringement were found, defendant should be enjoined. No evidence on the public interest issue was presented at trial and no motion to reopen was made. In this circumstance, I cannot and do not give much credit to these declarations which are untested by cross-examination. Plaintiff contends that if it had been aware that such declarations would be offered by defendant, it would have gathered and filed an equal number of declarations to the contrary, attesting to the superiority of its "S" oxygenator over the BOS oxygenator.

Other complaints are raised by BOS users, such as potential short-term supply problems from the sudden cutoff of further BOS supplies without notice and the lag-time in training staff to use another slight-ly different model. Those complaints may be real, but they can be greatly alleviated by the provision of a transition period be-fore the injunction's prohibition becomes flatly effective.

 On balance, I find that the public interest will not be disserved by issuance of an injunction in the circumstances of this case and that the public interest to be served by protection of the nation's patent system outweighs any temporary inconven-ience or one-time costs associated with staff training or other costs associated with a changeover to another model. *See Smith Int'l,* 718 F.2d at 1581.

The permanent injunction will contain a six-month transition period to allow an effi-cient and non-disruptive changeover for those institutions who now employ the BOS oxygenator exclusively. Defendant shall pay to plaintiff a 12 percent royalty for the first two months, a 15 percent royalty for the next two, and an 18 percent royalty for the final two months of the transition peri-od. This royalty shall be on all sales com-mencing February 1, 1985 and ending July 31, 1985. The royalty shall apply to de-fendant's average unit selling price for the months of November and December, 1984. An additional royalty of 50 percent of any increase in the unit price above the Novem-ber-December base price shall also be paid.

Two final points should be men-tioned. Defendant argues that an injunc-tion will drive it out of business because the bubble oxygenator is its primary prod-uct. In effect, it argues for a compulsory license, which Congress did not see fit to include in the Patent Laws. The Court has found the infringement in this case to be willful and wanton. The argument must be rejected. *Id.*

Defendant also seeks to limit the injunc-tion to oxygenators having a substantially continuous helical rib (along the heat ex-changer coil) as opposed to a series of individual annular ribs. There is no evi-dence that such an oxygenator is being made. The request appears to be advisory. *See Velo-Bind, Inc. v. Minnesota Mining & Mfg. Co.,* 647 F.2d 965, 974–75 (9th Cir. 1981). Moreover, an injunction need not be limited to the specific accused device.

> Such an injunction [after trial on the merits] prohibits infringement by any product, not just those involved in the original suit. The burden of avoiding infringement at the risk of contempt falls upon the one enjoined.

*Smith, Int'l,* 718 F.2d 1581 n. 8.

*Conclusion*

The judgment entered herein shall in-clude a permanent injunction consistent with the foregoing and an award of double damages.

To the extent the same are required, this Memorandum Opinion shall constitute my findings of fact and conclusions of law under F.R.Civ.P. 52(a).