PEARL INVESTMENTS, LLC, Plaintiff

v.

STANDARD I/O, INC. and Jesse Chunn, Defendants

Jesse Chunn, Third–Party Plaintiff

v.

Dennis Daudelin, Third–Party Defendant

No. CIV.02–50–P–H.

United States District Court, D. Maine.

Jan. 27, 2004.

**336**

See also 287 F.Supp.2d 73.

Todd S. Holbrook, John G. Osborn, Bernstein, Shur, Sawyer, & Nelson, Portland, ME, for Pearl Investments, LLC, Dennis Daudelin.

Robert H. Stier, Pierce, Atwood, Portland, ME, for Standard I/O Inc., Jesse Chunn.

## MEMORANDUM DECISION ON PLAINTIFF'S MOTION FOR ENTRY OF JUDGMENT ON EQUITABLE ISSUES AND ADDITIONAL DAMAGES

HORNBY, District Judge.

The jury returned a verdict finding that Jesse Chunn ("Chunn"), founder, owner, and president of Standard I/O, Inc. ("Standard I/O"), had misappropriated a Pearl Investments, LLC ("Pearl") trade secret, an automated trading program known as "Scalper,"[1] and had violated a nondisclo-

1. Scalper is a computer program designed to   automatically trade stocks based on market

sure agreement he had with Pearl. The jury also found that he did not act willfully or maliciously, and that Standard I/O did not violate a nondisclosure agreement. The jury awarded Pearl $54,000 in total damages against Chunn. In light of the jury's verdict, Pearl seeks injunctive relief against Chunn and Standard I/O to permanently enjoin them from all programming of any automated trading systems. *See* Pearl's Mot. (Docket Item 135). Pearl also asks me to disregard the jury's finding that the trade secret misappropriation was not willful and malicious, and to award treble damages and attorneys fees under 10 M.R.S.A. §§ 1544–45. *Id.* The parties have not requested any further evidentiary hearings to determine the appropriate length and scope of any injunction.

I **GRANT** Pearl's motion for injunctive relief against Chunn in part, and I **PERMANENTLY ENJOIN** Chunn from using, disclosing or copying Scalper and from violating the nondisclosure agreement. But I **DENY** Pearl's motion for injunctive relief against Standard I/O, and **DENY** Pearl's request for attorneys fees and treble damages pursuant to 10 M.R.S.A. §§ 1544–45.

## I. ANALYSIS

### A. *Injunctive Relief against Chunn*

When state law defines the underlying substantive right, state law also governs the availability of such equitable remedies as a permanent injunction. 19 Charles A. Wright & Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4513, at 214 (1982). Maine state law (here, the Maine Uniform Trade Secrets Act, 10 M.R.S.A. §§ 1541 *et seq.*) defines the substantive rights at issue, and, thus, governs the availability and scope of any injunctive relief that can be

indicators.

granted by the court. Under 10 M.R.S.A. § 1543, a court may enjoin an actual or threatened misappropriation. Maine also allows plaintiffs to obtain injunctive relief for breach of contract and exploitation of a trade secret in violation of a contractual agreement. *See* Andrew M. Horton and Peggy L. McGehee, *Maine Civil Remedies* §§ 5–5(d), (d)(3) (citing *Roy v. Bolduc,* 140 Me. 103, 34 A.2d 479, 480–81 (1943)) (scrutinizing non-competition agreements).

The jury found that Chunn misappropriated Pearl's trade secret, specifically its Scalper program, and breached a nondisclosure agreement. For the misappropriation, Chunn may be enjoined from using and disclosing information about the Scalper program trade secret. *See* 10 M.R.S.A. § 1543. *See also* Restatement (First) of Torts § 757, comment e. (2003). Chunn does not object to such an injunction stating, "Mr. Chunn does not object to the entry of an order enjoining either his use of Pearl's programming code or his attempt to program the concepts embodied in the Scalper design document." Def.'s Opp'n at 2 (Docket Item 137).

The more difficult question is whether I should grant Pearl's request that Chunn be prohibited from all programming of automated trading systems. Chunn not only misappropriated the trade secret, but also breached a nondisclosure agreement that gave Pearl a property interest in all "Discoveries" made while Chunn was under contract with Pearl. *See* Ex. 10. "Discoveries" is defined as "computer software systems, methods, designs, processes, algorithms and trade secrets whether patentable, copyrightable or not, made, conceived or reduced to practice ... during [Chunn's] contract" with Pearl. *Id.* I conclude that Pearl is entitled to injunctive relief against further violations of the non-

disclosure agreement. However, Pearl is not entitled to an injunction broader than the nondisclosure agreement. Enjoining programming of all automated trading systems would be just such a broadening in the absence of proof that the particular programming was using "Discoveries."

Pearl has not shown that Chunn is about to violate the nondisclosure agreement in a manner that would require a broader injunction.[2] Nor has Pearl shown that a specific type of work Chunn does (including the programming of automated trading systems) will always be contrary to the nondisclosure agreement (as opposed to using information or programming techniques that he could learn directly or indirectly from publicly available sources). Even if there is doubt, it is Pearl's burden to show that Chunn could not program any automated trading systems without relying on "Discoveries" owned by Pearl under the nondisclosure agreement.[3] Accordingly, I GRANT Pearl's motion for injunctive relief in part. I PERMANENTLY ENJOIN Chunn from using, disclosing or copying any Pearl confidential material, including the use, disclosure or copying of any computer software systems, methods, designs, processes, algorithms and trade secrets whether patentable, copyrightable or not, made, conceived or reduced to practice, including those embodied in the Scalper design document, conceived by Pearl or Chunn while Chunn was performing programming work for Pearl.

## B. Injunctive Relief against Standard I/O

Pearl also requests that I enjoin Standard I/O. But the jury found only Chunn liable, and thus only Chunn should be enjoined by name. Whether Standard I/O is within the scope of the injunction issued against Chunn will depend on factual specifics of an objected-to activity. Standard I/O, with notice, is bound to the injunction to the extent that it acts in active concert or participation with Chunn with regards to the matters covered by the injunction. Fed.R.Civ.P. 65(d); *Gay Students Org. of Univ. of New Hampshire v. Bonner,* 509 F.2d 652, 657 (1st Cir.1974). "Participation" may be a fairly low threshold under the current factual circumstances (*i.e.,* Chunn's ownership and direct control of Standard I/O may be sufficient). *Cf. G. & C. Merriam, Co. v. Webster Dictionary Co., Inc.,* 639 F.2d 29, 35 (1st Cir.1980) ("To hold a nonparty bound by an injunction it is thus essential to prove either that the nonparty participated in the

**2.** *I.e.,* Pearl has not shown that it will suffer irreparable injury as a result of the programming of any automated trading system by Chunn. In order to gain injunctive relief for something broader than the scope of the trade secret misappropriation or violation of the nondisclosure agreement, Pearl must show that it will suffer irreparable injury if injunctive relief is not afforded, that the threatened irreparable injury outweighs any harm to the defendant, and that the injunctive relief will not adversely affect the public interest. Horton and McGehee § 5–3 and note 17 (citing *Ingraham v. University of Maine at Orono,* 441 A.2d 691, 693 (Me.1982)). *Accord Securities and Exchange Commission v. Fife,* 311 F.3d 1, 8 (1st Cir.2002). Pearl has not met this burden. It is not clear, despite Pearl's factual assertions, that any and all programming of automated trading systems by Chunn would necessarily involve using information he learned while under contract with Pearl.

**3.** I recognize the principle that it may be appropriate in some circumstances to broaden the scope of an injunction to include prohibiting a particular project or business due to the difficulty of distinguishing further improper use or disclosure of the trade secret from independent discovery. Restatement (Third) of Unfair Competition § 44, comment d. (1995). But I cannot on this record find that a particular project will violate the nondisclosure agreement. I conclude that Chunn must only be enjoined from further misappropriation of the Scalper trade secret and violation of the nondisclosure agreement.

contumacious act of a party or that the nonparty was subject to the injunction because legally identified with a party.").

I therefore **DENY** Pearl's motion for injunctive relief against Standard I/O.

### C. Attorney Fees and Treble Damages

■■ Federal law, not state law, determines whether there is a right to jury trial in federal court. 9 Wright & Miller § 2303, at 57–58 (1995). Whether the trade secret misappropriation was "willful and malicious" in a trade secrets case is a triable issue by a jury in federal court. *See, e.g., Shiley, Inc. v. Bentley Labs., Inc.,* 794 F.2d 1561, 1564, 1567 (Fed.Cir.1986); *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.,* 342 F.3d 714, 730–31 (7th Cir. 2003). *Cf. Segrets, Inc. v. Gillman Knitwear Co., Inc.,* 207 F.3d 56, 66 (1st Cir. 2000).

In this case, the jury answered "No" to the question, "Was the misappropriation either willful or malicious?" Pearl invites me to disregard the jury's finding, and award treble damages and attorney fees. Pearl argues that it is within my discretion to disregard the jury's finding under 10 M.R.S.A. § 1544 ("If willful and malicious appropriation exists, the court may award exemplary damages . . .") and section 1545 ("If . . . willful and malicious misappropriation exists, the court may award attorneys fees . . ."). *See* Pearl's Mot. at 5–6 (citing Uniform Trade Secrets Act §§ 3–4, Comments to 1990 Main Volume).

A jury's finding of willfulness may have left me some discretion as to what trebling or attorney fees to impose (*i.e.,* a possible independent determination of whether additional damages are appropriate or whether I must award additional damages). *Compare Shiley,* 794 F.2d at 1568; *Norfin, Inc. v. Int'l Bus. Machs. Corp.,* 625

F.2d 357, 366 (10th Cir.1980) *with Yoder Bros., Inc. v. California–Florida Plant Corp.,* 537 F.2d 1347, 1383 (5th Cir.1976) (all cases where the jury found the conduct was willful and malicious). But the jury's finding that there was *no* willful or malicious conduct precludes any recovery of additional damages. *See Shiley,* 794 F.2d at 1568 (interpreting 35 U.S.C. § 284 and concluding that if the jury finding is that willful infringement did *not* occur and that finding is not overturned on a judgment as a matter of law, there is no basis for assessing increased damages for willful or malicious misappropriation).[4]

Accordingly, I **DENY** Pearl's request for attorneys fees and treble damages pursuant to 10 M.R.S.A. §§ 1544–45.

### II. CONCLUSION

I **GRANT** Pearl's motion for injunctive relief as follows. I **PERMANENTLY ENJOIN** Chunn from using, disclosing or copying any Pearl confidential material, including the use, disclosure or copying of any computer software systems, methods, designs, processes, algorithms and trade secrets whether patentable, copyrightable or not, made, conceived or reduced to practice, including those embodied in the Scalper design document, conceived by Pearl or Chunn while Chunn was performing programming work for Pearl.

I **DENY** Pearl's motion for injunctive relief against Standard I/O.

I **DENY** Pearl's request for attorneys fees and treble damages pursuant to 10 M.R.S.A. §§ 1544–45.

**SO ORDERED.**

---

4. The Maine statute is an adoption of the Uniform Trade Secrets Act, whose interpretation follows federal patent law, 35 U.S.C. §§ 284–85. Uniform Trade Secrets Act §§ 3–4, Comments to 1990 Main Volume.